[Crim. No. 19637. Oct. 11, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY MICHAEL ROLLO, Defendant and Appellant.

## COUNSEL

Roger Agajanian for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant appeals from a judgment convicting him of receiving stolen property.[1] He contends the trial court committed reversible error in allowing the prosecution to impeach him by proof of a prior conviction of a felony of an undisclosed nature, and in giving an instruction on "other crimes" evidence. As will appear, we have concluded that the court erred in both respects but that on the record of this case the rulings were not prejudicial.

---

[1]The crime is committed by every person who receives or conceals, buys or sells, any item of stolen property with knowledge that it is stolen. (Pen. Code, § 496, subd. 1.)

David Chow, a technical director of the Kung Fu television show, owned a collection of antique samurai swords which he displayed on his living room wall. Defendant Rollo, an expert in Japanese martial arts, went to Chow's home assertedly to seek employment as a stunt man in the television show. In the interview defendant gave his name as "Michael Long." Chow told defendant that if he wished to demonstrate his karate skills he should do so at the YMCA, where Chow taught a class. Defendant never gave such a demonstration.

On February 13, 1974, burglars broke into Chow's home while he was away on a trip. Among the items stolen were three samurai swords which Chow valued, on the basis of appraisals, at a total of $25,000.

On February 23, 1974, defendant appeared with the three stolen swords at the studio of Fumio Demura, a karate instructor and former champion. The swords were in the trunk of defendant's car, and defendant offered to sell them at whatever price Demura thought fair. Demura said he would pay $400 for the lot, and defendant accepted; Demura testified at trial that the transaction was a "good buy." Defendant directed Demura to make the check payable to one Tom Cross; Demura so identified the payee on the check stub, but left the name on the check blank because he had difficulty writing in English.

Three days later, on February 26, 1974, defendant accompanied Tom Cross to a bank to cash the check. Cross had filled in his name as payee, and after verifying the transaction with Demura the bank paid Cross $400 in cash.

Cross and his brother Jim subsequently admitted the burglary of the Chow residence.

Defendant conceded at trial that he had had the swords in his possession and had sold them to Demura for $400; he denied, however, that he knew their value or that they were stolen property. He acknowledged having been inside the Chow residence, but denied that he saw the swords there. He asserted rather that his friend Cross, who seemed to be a collector of "all kinds of things," told him one day he wanted to "get rid of" the swords and asked if he knew anyone who might buy them. According to Demura, however, when defendant offered the swords for sale he claimed he had won them in a poker game.

The jury found defendant guilty as charged.

## I

██ Defendant's principal contention on appeal is that the court erred in ruling on the admissibility of a prior conviction for purposes of impeachment. The information charged defendant with having previously been convicted of the crime of soliciting another to commit murder. (Pen. Code, § 653f.) Defendant formally admitted the truth of the allegation before the jury was impanelled; in such circumstances, of course, "the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." (Pen. Code, § 1025.)

When defendant thereafter took the stand in his own behalf, however, the prosecutor indicated an intent to introduce the prior conviction as impeachment. Defense counsel objected on the grounds that the prior conviction had little probative value on the issue of defendant's veracity, and was highly prejudicial because of the seriousness of the crime of soliciting murder. The court ruled the prosecutor could ask defendant whether he had ever been convicted of a felony, but that no inquiry into the nature of that felony would be permitted. When defense counsel objected that the jury might infer the prior crime was the same as the charge for which defendant was on trial, the court suggested that counsel could "straighten out" the matter on redirect examination if he so chose.

In accordance with this ruling the prosecutor elicited the following admissions from defendant on cross-examination.

"Q. Mr. Rollo, you have been convicted of a felony yourself, haven't you? A. Yes, I have.

"Q. When was it? A. I don't know the exact date.

"Q. In 1973? A. Yes."[2]

Defense counsel declined to ask defendant on redirect to disclose the nature of his prior conviction.

██ In *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-454 [99 Cal.Rptr. 313, 492 P.2d 1], we unanimously declared the rule that trial courts have discretion to exclude evidence of prior felony convictions offered as

---

[2]Both the information and the abstract of judgment give February 26, 1974, as the date on which defendant suffered the prior conviction. According to the evidence in the case at bar it was also on February 26, 1974, that defendant accompanied Tom Cross to the bank in order to cash Demura's check for the stolen swords.

impeachment "when their probative value on credibility is outweighed by the risk of undue prejudice." (*Id.* at p. 453.) Twice in the past two years we have reviewed the origin and purpose of that rule, provided elaborate guidance in its application, and reaffirmed its mandate by reversing judgments of conviction on the ground that failure to exclude such evidence constituted a prejudicial abuse of discretion in the circumstances of each case. (*People* v. *Antick* (1975) 15 Cal.3d 79, 96-99 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-223 [127 Cal.Rptr. 457, 545 P.2d 833].) Surely we do not need to repeat that discussion so soon. By now it should be clear to all that when a defendant makes a timely objection to the introduction of evidence of a prior felony conviction for the purpose of impeaching his testimony, the trial court is under a duty (1) to determine the probative value of that evidence on the issue of the defendant's credibility as a witness, (2) to appraise the degree of prejudice which the defendant would suffer from admission of the evidence, and (3) to weigh the foregoing two factors against each other and exclude the evidence "if its probative value [on the issue of credibility] is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, . . ." (Evid. Code, § 352).

Here the court took the second of these steps, but not the first and third. The court correctly found that to disclose to the jury that defendant had previously been convicted of the crime of solicitation of murder would create a substantial danger of undue prejudice: the jury might draw the inference that because defendant had once solicited the commission of a murder, he had demonstrated such a defect of character or criminal disposition that he was likely to be capable of any offense and in particular was probably guilty of the charge now laid against him. Such an inference, of course, is wholly impermissible: it is the general rule, codified in our statutes, that "evidence of specific instances of a person's conduct is inadmissible to prove that on a particular occasion he acted in conformity with the trait of character indicated by his prior specific acts. (Evid. Code, §§ 1101, subd. (a), 787.)" (Fn. omitted.) (*People* v. *Antick, supra,* at p. 96 of 15 Cal.3d.)

Although Evidence Code section 788 permits introduction of prior felony convictions, in accordance with the foregoing rule they are received solely "For the purpose of attacking the *credibility* of a witness" (italics added). It is for this reason that *Beagle* requires the trial court to determine the probative value of the prior conviction on the issue of the defendant's credibility: without such a determination the court will be

unable to engage in the weighing process implicit in section 352 and mandated by the *Beagle* analysis.

The record herein raises serious doubts whether the trial court actually resolved this issue. When defense counsel first questioned the probative quality of the conviction the prosecutor replied in conclusory terms, claiming the offense "has to do with the person's veracity" and "is just connected with his dishonest type of conduct." Unsatisfied with these generalities, the trial court asked, "How does that relate to dishonesty and untruthfulness? That is my big question. Whether that type of crime has strong probative value." The question was never competently answered. The prosecutor sought to distinguish the case of an assault, which he admitted did not show dishonesty or untruthfulness, and said the crime of solicitation of murder evidenced a "disrespect for the law." The court replied that it would also show a "disrespect for the law" if the defendant had actually shot someone, yet that crime would not necessarily demonstrate dishonesty and untruthfulness. In his final attempt at justification the prosecutor said rather lamely that "It is hard to explain, I suppose, as to why it indicates untruthfulness, but you have got a guy who is going underground making this kind of a contract and it . . . just, to me, *shows a character trait of willingness to do anything.*" (Italics added.)

The emphasized language is highly revealing. It suggests that the prosecutor's true motive was not to furnish the jury with relevant information on the defendant's credibility as a witness, but simply to blacken his character so that the jurors—in defense counsel's succinct words of warning—"will think this guy would do anything if he will commit a murder." As stated above, that inference is legally impermissible as a ground of impeachment.

The trial court, however, neither rebuked the prosecutor for his improper suggestion nor attempted a justification of its own. Indeed, the court apparently gave up the effort and never in fact ruled that defendant's prior conviction had substantial probative value on the issue of credibility which outweighed its admitted danger of undue prejudice. Rather, the court terminated the discussion by announcing that "I think in this case I will cut it in half. You can ask him if he has been convicted of a felony without going into the circumstances surrounding the conviction because I think that would be prejudicial. *I suppose it is all prejudicial but, I think, you are entitled to ask if he has been convicted of a*

*felony* to attack his credibility. I think to go into the nature of the crime would be prejudicial under [section] 352." (Italics added.)

The court thus ruled in effect that section 788 "entitled" the prosecutor to prove the fact of the prior conviction regardless of the risk of prejudice created. The ruling was in direct contravention of *Beagle* and its progeny, which hold that the facially absolute language of section 788 must be read together with the balancing test of section 352, and the prior conviction must be excluded if its probative value on the issue of credibility is substantially outweighed by a grave risk of undue prejudice.

Rather than applying that settled rule, however, the trial court adopted the novel procedure of permitting the prosecutor to use defendant's prior conviction for the purpose of impeachment without revealing to the jury the identity of the crime. We do not doubt the court was honestly of the opinion that its ruling struck an even balance between the competing interests of prosecution and defense. As will appear, however, the evenhandedness of the procedure is an illusion and the scales remain sharply weighted against the defendant.

The device adopted by the trial court has at least two obvious defects. First, it frustrates a prime function of the jury. ■ No one denies that different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; and " 'Acts of violence . . . generally have little or no direct bearing on honesty and veracity.' " (*People* v. *Beagle, supra,* at p. 453 of 6 Cal.3d, quoting from *Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936, 940 [127 App.D.C. 343] (per Burger, J.).) Indeed, this premise is implicit in the requirement of our decisions that the trial court weigh the probative effect of each proffered conviction against its risk of prejudice "under the unique facts of the particular case." (*People* v. *Rist, supra,* at p. 221 of 16 Cal.3d.)

■ The final arbiter of the probative effect of such a conviction, however, is the jury: it is that body which is called upon to determine the credibility of the defendant who testifies in his own behalf, and one of the ingredients of its decision-making process will be the degree of persuasiveness it finds in the prior conviction. But precisely because that degree varies widely according to the nature of the crime, the fact which is here withheld from the jury—the identity of the prior felony—is

essential to the conduct of its deliberations. The jury manifestly cannot *weigh* the probative value of the defendant's particular prior offense unless it knows what that offense was. To tell the jurors only that the defendant has been convicted of "a felony" is therefore to furnish them with a largely meaningless fragment of information.

Secondly, although the trial court professed concern for the prejudicial effect of the prior conviction on defendant's right to a fair trial, half a cure in these circumstances is no cure at all and may even be worse than the disease. It is true that to permit the conviction to be used without disclosing its nature forestalls any *direct* prejudice flowing from the latter. But in so doing the procedure removes one risk of harm only to create a number of others equally grave.

To begin with, it is highly unlikely that a jury which is advised only that the defendant has been convicted of "a felony" will let the matter rest. Normal human curiosity will inevitably lead to brisk speculation on the nature of that conviction, and the range of such speculation will be limited solely by the imaginations of the individual jurors. Some may assume, for example, that the defendant's prior conviction was similar to or identical with the charge for which he is on trial.[3] Others may speculate that the conviction involved some form of unspeakable conduct, such as torture murder, gang rape, or child molestation. Why else, the jurors might naturally ask, was the name of the crime withheld from them?

Because a conviction thus "expurgated" is of so little assistance in determining credibility, still other jurors may give up the effort and simply draw the improper inference that the conviction "at least" shows the defendant has a criminal disposition. Finally, even conscientious jurors may be misled to the defendant's prejudice: given the circumstances and the instructions under which this evidence is presented to them, such jurors may well speculate that the conviction was for an offense especially damaging to the defendant's credibility, such as perjury. Why else, they might wonder, were they told of its occurrence? The problem, of course, is that when both are expurgated in this fashion a conviction of aggravated assault committed in a drunken rage—the probative value of which is nil—has exactly the same appearance to a jury as a perjury conviction.

---

[3] This is the precise danger pointed out by defense counsel in the case at bar.

No less illusory is the solution to these dangers adopted by the trial court, i.e., that the defendant himself, if he so elects, may disclose the nature of the prior conviction to the jury on redirect examination. Whatever superficial appeal this expedient may have vanishes when we coldly consider the predicament in which it leaves the defendant.

By definition, this "election" is not imposed in all cases: when the prior conviction is not unduly prejudicial to the defendant, the court will presumably permit the prosecutor to disclose its nature. It is only when knowledge of the conviction by the jury would for any reason create a substantial danger of prejudice, as here, that the defendant is furnished the "opportunity" of making the disclosure itself. In other words, the procedure adopted by the trial court gives the defendant the archetypal Hobson's choice of (1) remaining silent on the point and subjecting himself to the foregoing improper speculation by the jury, or (2) divulging the nature of his prior conviction and incurring an equally grave risk that the jury will draw an impermissible inference of guilt. Either way leads to prejudice: it is a game, in short, of heads the prosecution wins, tails the defendant loses. Surely this is too heavy a burden to place on the exercise of an accused's right to testify in his own behalf. We conclude that the trial court erred in casting the defendant into this dilemma.[4]

■ On the record before us, however, the error was not of prejudicial dimensions. The case against the defendant was strong: he admitted being in possession of the swords taken from the Chow residence, and the jury could fairly infer he knew they were stolen from the totality of such circumstantial evidence as his acquisition of the swords soon after the burglary and from a person of questionable character, his prompt resale of the items under unusual circumstances and at a grossly inadequate price, and his inconsistent explanations as to how he actually obtained them. None of this evidence was tainted by the court's error in

---

[4]The dissent reveals that it shares with some trial courts an erroneous notion of the purpose of prior felony evidence. In its concluding paragraph, the dissenting opinion deplores "the anomalous result that the more heinous the nature of the previous conviction, the more likely its exclusion because of its inflammatory and prejudicial nature." Such a result is not anomalous, it is compelled. The most heinous offenses in the Penal Code arsenal are those involving violence. Yet a propensity for violence, as suggested by a previous conviction of a violent act, does not reflect upon the only trait for which prior felony evidence is admissible: the credibility of the witness.

For the reasons stated in this opinion we disapprove *People* v. *Roberts* (1976) 57 Cal.App.3d 782, 790 [129 Cal.Rptr. 529], *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 536 [120 Cal.Rptr. 762], and *People* v. *Obie* (1974) 41 Cal.App.3d 744, 752-753 [116 Cal.Rptr. 283], insofar as they suggest or support the procedure adopted by the trial court herein.

"expurgating" defendant's prior conviction. The prosecution did not make a major point of that conviction, and defense counsel was permitted to prove that the People's principal witness, David Chow, had himself been convicted of felony. Nor did the ruling on his prior conviction keep defendant off the stand: he testified at length, and had ample opportunity to present his case to the jury. That it was unconvincing was not the fault of the trial court, but of the weakness of defendant's story.

We conclude, after an examination of the entire cause, including the evidence, that it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of this error. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

II

Defendant's remaining contentions relate to the instructions. He first asserts the court should have given a cautionary instruction on its own motion at the time of taking the foregoing testimony on his prior conviction, advising the jury of the limited purpose for which such evidence was received. The point is without merit. Penal Code section 1093, subdivision 6, provides that although the judge "must" instruct the jurors on pertinent legal issues at the close of evidence, he "may" give them in addition such instructions as he deems necessary for their guidance "[a]t the beginning of the trial or from time to time during the trial . . . ." The statute thus codifies the rule that instructions during the course of trial are within the court's discretion.

In *People* v. *Johnson* (1967) 253 Cal.App.2d 396, 399-400 [61 Cal.Rptr. 225], the trial court refused a request to give a cautionary instruction immediately after the defendant was impeached by proof of prior felony convictions; the appellate court found no abuse of discretion because there was no evidence that the jurors had failed in their duty to keep an open mind until the cause was submitted to them. In the case at bar, the record is to the same effect and there was not even a request for an immediate limiting instruction. A fortiori no abuse of discretion appears.

At the close of trial the court did give a cautionary charge on the relevance of prior felony convictions.[5] On its own motion, however, the court also gave an instruction on the totally different topic of "other crimes" evidence, i.e., proof of an *uncharged* offense committed by the defendant as circumstantial evidence of a substantive element of the crime *charged.* The instruction, a modified version of CALJIC No. 2.50, told the jury that "Evidence has been received tending to show that the defendant committed a crime other than that for which he is on trial," and that such evidence could be considered in determining whether defendant had the intent and knowledge necessary to commit the offense of receiving stolen property. (See Evid. Code, § 1101, subd. (b).)

The parties sharply disagree over the meaning of the word "evidence" in the quoted instruction. Defendant asserts that the court intended the instruction to apply to the evidence of his prior felony conviction introduced for impeachment purposes on cross-examination, in which event the charge was an erroneous statement of law; the People contend the instruction was correct because it was designed instead to apply to certain evidence in their case in chief allegedly tending to show that defendant participated in the burglary of the Chow residence. But the subjective intent of the court in giving this instruction on its own motion is both unknowable and irrelevant. The issue is how the jurors understood it, and in particular whether it is reasonably probable that they did in fact apply it to defendant's prior conviction.

To begin with, the record does not support the People's contention. After a careful reading of the transcript we remain very doubtful that the People actually attempted to prove defendant guilty of the Chow burglary, or, if they did, that sufficient evidence was introduced to support an instruction on that theory. Our doubts are confirmed by the fact that although on appeal the People claim the evidence they introduced made CALJIC No. 2.50 both "proper and necessary," at trial they did not request the giving of that or any similar instruction.

Instead, the decision to give CALJIC No. 2.50 was made on the court's own initiative, and we can only conclude the court did so out of an excess of caution. But however laudable the court's motive, "It is error to

---

[5]"The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility. It is one of the circumstances that you may take into consideration in weighing the testimony of such a witness." (CALJIC No. 2.23.)

give an instruction which correctly states a principle of law which has no application to the facts of the case." (*People* v. *Sanchez* (1947) 30 Cal.2d 560, 572 [184 P.2d 673].) Yet such an error is usually harmless, having little or no effect "other than to add to the bulk of the charge." (*Id.* at p. 573.) There is ground for concern only when an abstract or irrelevant instruction creates a substantial risk of misleading the jury to the defendant's prejudice.

■ In the case at bar it is at least possible that one or more of the jurors may have believed CALJIC No. 2.50 referred to defendant's prior felony conviction: the testimony admitting that conviction could reasonably have been deemed "Evidence . . . tending to show that the defendant committed a crime other than that for which he is on trial." But it is highly unlikely that any such misapprehension contributed to the verdict. We have seen that on the issue of credibility the jurors could not properly have weighed the probative value of defendant's prior conviction because they were not told of its nature. For the same reason they must have been unable to assign any meaningful value to the conviction on the issues of intent and knowledge raised by CALJIC No. 2.50: an unidentified conviction is no more enlightening on the latter issues than on testimonial veracity. In effect, therefore, the court's error in "expurgating" the prior conviction for impeachment purposes inadvertently rendered harmless its subsequent error in giving an unnecessary and ambiguous "other crimes" instruction. ■ ■■■
■ Again we are of the opinion, after a review of the whole record, that the error did not cause a miscarriage of justice.[6]

The judgment is affirmed.

Tobriner, Acting C. J., Wright, J.,* Sullivan, J.,† and Ault, J.,‡ concurred.

---

[6]In the future, however, in any case in which the court has properly admitted both a prior felony conviction of the defendant for the purpose of impeachment and "other crimes" evidence on a substantive issue, the cautionary instruction on the latter point should identify the evidence to which it relates. CALJIC instructions are properly neutral and objective, but in certain circumstances clarity requires that they be made to refer specifically to the facts of the case before the court.

*Retired Chief Justice of California sitting under assignment by the Acting Chairperson of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

‡Assigned by the Chairperson of the Judicial Council.

**RICHARDSON, J.**—I concur in the judgment, affirming defendant's conviction. I respectfully dissent, however, from that portion of the majority opinion which holds that the trial court erred in admitting into evidence for impeachment purposes the fact that defendant had suffered a prior conviction. The issue presented is—may a prosecutor at trial impeach a criminal defendant by showing that he has been convicted of a felony of an undisclosed nature? Under the particular circumstances of this case in which the trial court carefully adhered to the constraints enunciated by us in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], I conclude that the court did not abuse its discretion in permitting such impeachment.

The record discloses that before the jury was impanelled, and in an in-chambers conference between the court and counsel, the court was asked if it wished then to decide whether defendant's prior 1973 conviction of soliciting a murder (Pen. Code, § 653f) was a proper basis upon which to impeach defendant. The court stated that it would determine the issue when it arose at trial. Thereafter, defendant elected to take the witness stand and following defendant's direct examination, and early in the cross-examination, a second in-chambers discussion was convened between court and counsel during which the impeachment by proof of a prior felony conviction was again considered. Defendant's counsel argued that the prior conviction involved "a very serious felony," and that disclosure of the conviction would be prejudicial to defendant, because the jurors "will think this guy would do anything if he will commit a murder." While the trial court generally agreed that disclosure of the prior conviction would be prejudicial, it added, however, in addressing the prosecuting attorney, that ". . . you are entitled to ask if he has been convicted of a felony to attack his credibility." The court thereupon ruled that the prosecution could introduce evidence that defendant had suffered a prior felony conviction of an undisclosed nature. Defense counsel objected to this procedure on the ground that the jury ". . . might think it [the prior conviction] is the same felony he is accused of here today." The court acknowledged the problem, concluding that "if you [defense counsel] want to straighten out the type of conviction it was, you can do that in redirect."

Thereafter, during cross-examination, the following testimony was elicited:

"Q. Mr. Rollo, you have been convicted of a felony yourself, haven't you?

"A. Yes, I have.

"Q. When was it?

"A. I don't know the exact date.

"Q. In 1973?

"A. Yes."

Defense counsel declined the trial court's in-chambers invitation to examine defendant further on redirect examination for the purpose of establishing that the prior conviction was not an offense similar in character to the offense for which defendant was being tried. The jury returned a verdict of guilty as charged.

Section 788 of the Evidence Code (all statutory references are to the Evidence Code unless otherwise indicated) contains broad statutory language authorizing impeachment by proof of *any* felony. It provides in pertinent part, "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." Section 352 vests the trial court, however, with discretion to exclude evidence the probative value of which is outweighed by a substantial danger of undue prejudice.

In *People* v. *Beagle, supra,* 6 Cal.3d 441, we considered the interaction of sections 788 and 352, emphasizing that the admission or exclusion of felony impeaching evidence "in each instance must depend upon the sound exercise of judicial discretion." (P. 453.)

In *Beagle* we expressly declined to establish rigid standards controlling that discretion, but rather affirmed the propriety of those various considerations originally expressed in *Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936, 940-941 [127 App.D.C. 343]. These factors include: (1) the nature of the prior conviction, i.e., whether the crime in question involved "dishonest conduct," as opposed to crimes of violence or passion, noting that "generally" the latter do not bear on credibility; (2) the temporal proximity or remoteness of the prior conviction; (3) the similarity of the prior conviction to the offense or offenses presently charged; and (4) the likelihood that admission of the prior conviction

would inhibit the defendant from testifying, thus depriving the factfinder of hearing defendant's version of events. (*Beagle, supra,* at p. 453.) In connection with the last factor we reaffirmed well established principles in cautioning that "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity," that "the general rule is that felony convictions bearing on veracity are admissible," and that the reviewing courts should always give "careful consideration" to an exercise of trial court discretion under section 788 (*Id.,* at pp. 453-454.)

In two subsequent cases, we have held, successively, that trial courts had abused their discretion in admitting, for impeachment purposes, certain "remote" felony convictions (*People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43]), and a "similar" prior conviction where other and dissimilar priors were available (*People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]).

Although the majority herein elects not to reach the issue, defendant insists that solicitation of murder is not an offense of the type which bears directly upon his credibility, thus rendering the prior conviction inadmissible under section 788. I cannot agree, and am persuaded that the solicitation of a murder involves those elements of deceit and treachery which are indicative of a lack of both honesty and integrity. Solicitation of murder consists of secret, conspiratorial conduct, the goal of which is commission of the ultimate and most serious and heinous of all crimes.

Although the trial court did not *expressly* find that the prior conviction bore on credibility, we may fairly infer such a finding from the court's ruling, which immediately followed its inquiry of counsel "Whether that type of crime [solicitation of murder] has strong probative value" as it relates to "dishonesty and untruthfulness."

In my opinion, the character of the prior conviction bore on defendant's credibility, and was neither remote in time nor similar in nature to the present charge. No other priors were available for impeachment purposes. Defendant was not inhibited from testifying by the introduction of the prior, but rather, with full knowledge of the risk of impeachment, took the stand and did testify. Finally, the exclusion of the prior conviction would have given defendant at trial a "false aura of veracity" to which he was not entitled. Thus each of the various *Beagle* considerations were fully satisfied.

Nonetheless, the trial court recognized the considerable risk of prejudice to the defendant which existed in the event of disclosure of the particular felony for which he was convicted. Moved by this possibility, and fully consistent with each of the *Beagle* factors, the trial court exercised its careful discretion and fashioned a compromise, ruling that although the *fact* of defendant's prior conviction could be introduced consistent with section 788, the *nature* of the prior offense should remain undisclosed for defendant's own protection in harmony with section 352, unless defendant himself elected to reveal it.

Section 788 is silent on the question whether the nature as well as the fact of the prior conviction *must* be disclosed. There is ample authority, however, for the general proposition that impeachment under section 788 (and under its predecessor, Code Civ. Proc., § 2051) *may* extend to disclosure of the character of the particular prior conviction. We, ourselves, have so held. (*People* v. *Smith* (1966) 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *David* (1939) 12 Cal.2d 639, 646 [86 P.2d 811].) The rule has been expressed by one well respected commentator: "The witness may be asked whether he was convicted of a felony. [Citations.] It is also permissible to go one step further, and ask the *nature* of the crime, i.e., the particular felony. [Citations.]" (Witkin, Cal. Evidence (2d ed. 1966) § 1246, at pp. 1148-1149, italics in original.) However, I have found no authority, and the majority cites none, which has held that the trial court *must,* in the exercise of its discretion, require disclosure of the nature as well as the fact of the conviction.

It is readily apparent that at this point the discretion of a trial court is sorely taxed in weighing opposing considerations. On the one hand is the right of the criminal defendant to a fair trial which prompted enunciation of our *Beagle* safeguards against undue prejudice. In this connection I am of the view that invocation of section 788 as to a criminal defendant necessarily and always involves some risk of prejudice, for it seems fair to conclude that disclosure of *any* felony conviction may reduce the credibility of the witness in the eyes of the average juror to a greater or lesser extent depending upon the nature of the particular felony. Beyond that, however, the trial court, faithful to section 352, must exclude that evidence which "will create a substantial danger of undue prejudice." On the other hand, to exclude all reference to a felony conviction is unfair to the prosecution which is authorized under the very broad language of section 788 to attack defendant's credibility by introducing proof of any such convictions. It creates, as to the defendant, that "false

aura of veracity" which *Beagle* specifically condemned. The trial court, weighing these considerations, reached a compromise.

Several post-*Beagle* appellate cases have suggested that the exact procedure employed by the trial court herein is proper in an appropriate case. (See *People* v. *Roberts* (1976) 57 Cal.App.3d 782, 790 [129 Cal.Rptr. 529]; *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 536 [120 Cal.Rptr. 762]; *People* v. *Obie* (1974) 41 Cal.App.3d 744, 752-753 [116 Cal.Rptr. 283]; *People* v. *Delgado* (1973) 32 Cal.App.3d 242, 250, fn. 4 [108 Cal.Rptr. 399], disapproved on other grounds, *People* v. *Rist, supra,* 16 Cal.3d at p. 222, fn. 10.) In *Roberts,* for example, the Court of Appeal held that the trial court erred under *Rist* in admitting proof of prior convictions of offenses which were identical with, or similar to, the charged offenses. In acknowledging that the trial court had abused its discretion, however, the court nonetheless observed: "We do not, however, believe that the trial court was powerless under the circumstances of this case to deny to defendant that 'false aura of veracity' of which the court said in *Beagle*: 'No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible.' (6 Cal.3d at p. 453.) Both of the convictions were of crimes which 'rest on dishonest conduct.' They were not so remote in time that their probative value for impeachment was destroyed. *Under such circumstances, an appropriate manner of handling the matter would be for the court to permit proof by defendant's admission (or by an expurgated version of the judgment) of the fact of defendant's conviction of a felony, without specifying any further details. . . .* The risk of the jury assuming the conviction is for a crime more damaging to defendant than the one of which he was in fact convicted can be avoided by permitting the defendant at his election to require specification of the crime or crimes upon which impeachment is based, and in the absence of such specification by admonishing the jury not to speculate that any particular felony is involved." (*People* v. *Roberts, supra,* 57 Cal.App.3d 782 at p. 790, italics added.)

I am mindful that the price of the partial disclosure permitted by the trial court herein is to permit the jury to speculate on the nature of the prior conviction. This speculation may be terminated by the defendant himself who may elect, as noted in *Roberts,* to disclose the particular prior offense. Moreover, no reason appears why the court, in the exercise of its discretion, could not permit counsel to establish the dissimilar nature of the prior offense without disclosing to the jury its actual nature. Further, the jury ordinarily should be admonished that the impeaching

evidence may be used only for purposes of evaluating credibility. In the usual situation in which the impeaching evidence by way of prior felony convictions meets the *Beagle* standards and is not unduly prejudicial, the better practice is to permit disclosure. However, a different approach is justified in those cases in which, as here, the disclosure of the prior conviction because of its nature involves a substantial danger of undue prejudice to defendant. In such a situation, I would hold that once the trial court has carefully considered all of the various *Beagle* factors and has established that the impeaching evidence otherwise favors and permits admissibility, the fact of the prior conviction but not its nature may be admitted.

The majority continues its systematic dismantling of the principle, legislatively established in section 788, that a criminal defendant can be impeached by proof of conviction of a felony. Although accomplished in installments, by continuously narrowing trial court options, it has rather effectively erased section 788 from the Evidence Code.

The procedure adopted by the trial court is well within its discretion. It permits a reasonable accommodation of both defendant's fair trial rights and the prosecution's broad authority to dispel, at least in part, any "false aura of veracity." The adoption, in all cases, of a flat rule of admission of the fact and nature of the prior conviction would in some instances unduly prejudice a defendant contrary to the intent of section 352. Conversely, a rigid rule of exclusion could mislead the jury regarding defendant's credibility, and might well lead to the anomalous result that the more heinous the nature of the previous conviction, the more likely its exclusion because of its inflammatory and prejudicial nature. Such a result is flatly contrary to both the express letter and spirit of section 788. The trial court's action, in my view, constituted a fair, reasonable and practical compromise of the interests of both parties and the purposes of both sections. I would conclude that the trial court's ruling was within "the sound exercise of judicial discretion." (*Beagle, supra,* at p. 453.)

Clark, J., concurred.