[No. F003487. Fifth Dist. Nov. 7, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY FOREMAN, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Jerome McGuire, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edmund D. McMurray, Joel Carey and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, (G. A.), P. J.**—The defendant appeals from a judgment on a jury verdict finding him guilty of burglary (Pen. Code, § 459). The principal issue is whether the trial court prejudicially erred in permitting defendant's

impeachment with a prior burglary, "sanitized" to "a felony involving theft."

## FACTS

On September 5, 1983, at approximately 4:20 a.m., Fresno city police officers were dispatched to investigate the triggering of a silent alarm at a shop known as "A U-Neek Boo-Teek," located at 4561 N. Blackstone, Fresno, California. Ultrasonic alarm sensors had been mounted in the ceiling inside the store and contacts placed on the door and windows.

Officers, including Officer Moster, arrived at the scene in two minutes. At that hour in the morning there was no foot traffic and only sparse automobile traffic. Moster investigated and found the doors and windows of the store secure. There was no one except a gas station attendant in the immediate vicinity. He positioned himself at the northeast corner of the building. Other officers were positioned in other locations around the building. Moster looked along the front of the building which faced Blackstone Avenue and saw no one. He then looked westward along the north side of the building and saw no one. After two or three seconds, he turned back and looked along the front of the building again and saw a man, later identified as the defendant, in a crouched position directly in front of the building, just beginning to run away. The person was 15 to 20 feet away when Officer Moster first saw him. The suspect's back was to the wall of the store.

Officer Moster repeatedly shouted: "Police! Halt!" The defendant ran at full speed across Blackstone Avenue and jumped over a wall. Moster and another officer chased after the defendant, catching him shortly after scaling the wall and finding the defendant on the other side.

Officer Moster did not detect an odor of alcohol about the defendant, nor any injuries to the defendant. The officer said the area around the business was "bright as day" from a combination of street lights, the lights around the boutique and the gas station lights. The degree of darkness was disputed by others. The gas station where the attendant was located was 150 to 200 feet away from the boutique.

Donald Dickerson, who was working at the gas station immediately adjacent to the boutique on the morning in question, testified he saw several police cars arrive at the boutique shortly after 4:20 a.m. Then, he saw a person on the roof of the store, toward the front of the building, crouching behind a sign. The top of the roof of the boutique is approximately 10 feet from the ground. He observed the individual jump from the roof of the building, land on the sidewalk in front of the building, fall to his knees and

run away, limping. He watched the police chase the man across Blackstone Avenue and later observed the suspect inside a police car. Although it was difficult to see the individual on the roof and he did not see his face, Dickerson identified the man he observed jump from the roof of the boutique as the defendant.

When one of the owners of the boutique arrived at the scene, he and police officers entered the boutique and found a duffel bag or gym bag containing jewelry valued between $18,000 and $20,000. Glass display cases which previously had contained the jewelry appeared to have been pried open. Also inside the bag were screwdrivers, a pocket knife and gloves. A crowbar, flashlight and rope were found on the roof of the building near a hole in the ceiling approximately three feet wide and four or five feet long. The boards in the ceiling appeared to have been pried open and broken off.

### DEFENSE

Robert Hill testified he had known the defendant since January 1983. On September 5, 1983, the defendant arrived at Hill's house between 8 and 9 p.m. and stayed until 4 a.m., drinking beer and playing cards. The two men consumed one and one-half to two cases of beer during an eight-hour period. At around 4 a.m., Hill described himself as "pretty intoxicated" and wanted to go to sleep. The defendant "seemed all right" and left for home. Hill testified it would take approximately 15 to 20 minutes to walk from his house to A U-Neek Boo-Teek.

The defendant testified he drank two 6-packs of beer at Hill's house. At 4 a.m. he could "feel" the alcohol but was not drunk. Hill was sleepy, so the defendant left for home. As he walked by the boutique, he noticed patrol cars and police officers. He commenced jogging across Blackstone, away from the police, as he feared being arrested for public intoxication. He jumped over a four- to five-foot wall and fractured his foot. Officers came over the wall and apprehended him.

### DISCUSSION

### PART I

*Admission of Sanitized Identical Prior*
*Conviction for Impeachment*

Before trial, defendant moved to exclude evidence of a prior burglary conviction suffered by the defendant on October 9, 1981. Despite the "with-

out limitation" language of Proposition 8,[1] the clairvoyant trial judge held Proposition 8 did not abrogate the requirement that he exercise his discretion within the meaning of Evidence Code section 352. Exercising its discretion, the trial court permitted the prosecutor to ask the defendant only if he had been convicted of a felony involving theft. The court stated in part: "It is my understanding that Section 352 of the Evidence Code does still apply to this type of case that that was not repealed by Proposition 8, and does still apply.

"And in considering that, that we will permit you to use it and ask if he has been convicted of a theft-type of offense and not mention the word 'burglary' unless something completely unexpected comes up."

Despite the court's ruling, defendant took the witness stand and testified fully regarding his version of the events. He was impeached with the prior burglary as "sanitized."

*People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111] interpreted the language of Proposition 8 to mean that the trial court's discretion to exclude priors offered for purposes of impeachment if the probative value of the evidence is outweighed by the risk of undue prejudice was left intact, stating: "[Proposition 8] was not intended to abrogate the traditional and inherent power of the trial court to control the admission of evidence by the exercise of discretion to exclude marginally relevant but prejudicial matter—as, indeed, is provided by Evidence Code section 352." (*Id.*, at p. 306; fn. omitted.) Further, the *Castro* court held that: "[S]ubject to the trial court's discretion under [Evidence Code] section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty." (*Id.*, at p. 306.) The court equated moral turpitude with a readiness to do evil, reasoning that a crime involving moral turpitude has some bearing upon credibility. By so holding, the court broadened the class of prior felonies prima facie admissible for impeachment from those including only dishonesty to felonies involving moral turpitude.

Defendant does not argue that burglary does not involve moral turpitude or that the prior burglary was not prima facie admissible, subject to the exercise of Evidence Code section 352 discretion.

---

[1]Article I, section 28, subdivision (f) of the California Constitution, added by Initiative Measure effective June 1982, commonly referred to as Proposition 8, provides in pertinent part:

"Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

■ In arguing the trial court committed prejudicial error in admitting an identical "sanitized" prior conviction, appellant relies heavily upon *People v. Barrick* (1982) 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243] and other pre-*Castro* cases. In *Barrick* the defendant was convicted of theft and unlawful driving or taking of a vehicle (Veh. Code, § 10851). The trial court permitted the defendant to be impeached with a prior felony conviction of automobile theft by being asked if he had ever been convicted of a "felony involving theft." The Supreme Court reversed the conviction.

After reviewing the previous cases, the *Barrick* court said: "Thus, the rule emerges that identical prior offenses may not be used; similar prior convictions should only be used sparingly." (*People v. Barrick, supra,* 33 Cal.3d at p. 126.) *Barrick* disapproved this particular type of "sanitization" on the basis of the supposed inherent danger the jury will speculate a prior "felony involving theft" is identical to the theft offense with which the defendant is presently charged "which inevitably leads to the improper presumption that 'if he did it once, he will do it again.'" (*Id.,* at p. 127.) The court, having previously established a rigid, black letter rule of exclusion as to a prior offense identical to the offense on trial, necessarily had to disapprove "sanitization" to protect the integrity and prevent circumvention of this rule. As will appear, this black letter rule of exclusion has since been repudiated in *Castro.* The rejection of the black letter rule of exclusion undercut any basis for continuing disapproval of *Barrick*-style sanitization.[2]

*People v. Castro, supra,* 38 Cal.3d 301, repudiated these inflexible black letter rules, stating:

"The intention of the drafters of the initiative [Proposition 8] was to restore trial court discretion as visualized by the Evidence Code and to reject the rigid, black letter rules of exclusion which we had grafted onto the code by the *Antick* [*People v. Antick* (1975) 15 Cal.3d 79 (123 Cal.Rptr. 479, 539 P.2d 43)] line of decisions." (*People v. Castro, supra,* 38 Cal.3d at p. 312.)

In addition to *People v. Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 479, 539 P.2d 43], *Castro* expressly refers to *People v. Rist* (1976) 16 Cal.3d 211, 218-223 [127 Cal.Rptr. 457, 545 P.2d 833], *People v. Rollo, supra,* 20 Cal.3d 109, *People v. Woodard* (1979) 23 Cal.3d 329 [152 Cal.Rptr. 536, 590 P.2d 391], *People v. Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], *People v. Spearman* (1979) 25 Cal.3d 107 [157

---

[2]We do not express any opinion regarding sanitization in other situations, such as that involved in *People v. Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771], where the jury was told only that the defendant had been convicted of a felony.

Cal.Rptr. 883, 599 P.2d 74], and *People* v. *Barrick, supra,* 33 Cal.3d 115, as expressing principles included within the black letter rules "delineating the boundaries of permissible discretion." (*People* v. *Castro, supra,* 38 Cal.3d at pp. 307-308.)

The *Castro* court described "sanitization" as one of the black letter rules established by *Barrick,* saying: "[I]n *People* v. *Barrick* (1982) 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243], we held that in a case charging auto theft, the trial court erred in 'sanitizing' a prior auto theft conviction by calling it a 'felony involving theft.'" (*Id.,* at p. 308.)

Accordingly, it is clear *Barrick*'s rule does not survive Proposition 8. We are free to freshly approach the problem under the flexible factors established by *People* v. *Beagle* (1972) 6 Cal.3d 441, 452-453 [99 Cal.Rptr. 313, 492 P.2d 1].

*Beagle* directed that in exercising discretion the court shall consider (1) whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; (3) whether it was suffered for the same or substantially similar conduct for which the accused is on trial; and (4) what effect the admission would have on defendant's desire to testify. (*Id.,* at p. 453.)

The *Beagle* court expressly disclaimed an intent to establish rigid standards ". . . to govern that which in each instance must depend upon the sound exercise of judicial discretion." (*Id.,* at p. 453.)

We also must continually keep in mind the advice offered by the *Beagle* court: "We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible. We have previously said: 'The defendant must weigh the danger of impeachment by the introduction of prior convictions for every witness he calls for the defense. "The fact that the witness may also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances." (*Adamson* v. *California,* 332 U.S. 46, 57-58. . . .)' [Citations.]" (*Id.,* at pp. 453-454.)

The *Beagle* court further advised, quoting from *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 App.D.C. 343]: "'. . . A special and even more difficult problem arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for

excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe "if he did it before he probably did so this time." As a general guide, those convictions which are for the same crime should be admitted sparingly. . . .' " (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

In the instant case, three of the four *Beagle* factors favored admission: (1) The prior not only involved moral turpitude but involved theft, thus directly reflecting upon the defendant's honesty and truthfulness. A prior involving honesty and truthfulness, thus reflecting upon credibility, weighs heavily on the probative side of the Evidence Code section 352 formula. This factor favored admission of the prior. (2) The prior was recent—it occurred in 1981. This factor also favored admission of the felony. (3) Appellate assessment of the factor as to what effect the admission would have on defendant's decision to testify is skewed by the fact that defendant did take the stand and did testify in full to his version of the events. In whatever way the court's initial decision to admit the prior might have affected defendant's decision to testify, the fact is that he did testify. In light of after-events, we treat the issue as if the judge had been initially advised defendant would take the stand whether or not the judge ruled the prior admissible. Thus, this factor, too, favored admission. (4) The prior was suffered for the same conduct for which defendant was on trial. This was unfavorable to admission. While the *Beagle* guidelines suggest identical or similar priors should be admitted sparingly,[3] where, as here, there are no other available priors, the prosecutor must either offer the identical prior or forego the impeachment altogether. We do not think under the facts of this case the *Beagle* guidelines required the trial court to bar any impeachment.

While we would have upheld the admission of the prior burglary as a burglary, it is important to note the prior was never identified to the jury as an identical offense. The fact of its identity was kept from the jury and softened by "sanitization." The effect was to make the prior similar, but not identical, to the present offense. The reference to the prior as a "felony involving theft" precluded any speculation the prior involved a heinous crime. Defendant, having chosen to testify in his own behalf, is not entitled to a false aura of veracity. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

There was no error.

---

[3]This guideline from *Beagle* is to be distinguished from the rigid rule of exclusion of *Barrick*.

## Parts II-III*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Hanson (P. D.), J. and Woolpert, J., concurred.

---

*See footnote, *ante*, page 175.