Filed 5/24/22  P. v. Laws CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092138 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE19890001261) |
| v. | |
| HARRY DARNELL LAWS, | |
| Defendant and Appellant. | |

Defendant Harry Darnell Laws appeals from an order denying his petition for resentencing under Penal Code[1] section 1170.95.  Defendant argues the trial court erred when it denied his petition without appointing counsel because he made a prima facie showing that his conviction was based on the natural and probable consequences doctrine.  In particular, he asserts the court incorrectly engaged in factfinding when it considered the appellate opinion deciding his direct appeal and used the conclusions in that opinion to decide whether he had stated a prima facie case for eligibility under section 1170.95.  We affirm.

---

[1]     Undesignated section references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, a jury found defendant guilty of first degree murder. In short, defendant was involved in a shooting from a car in which he and three other men were riding. (*People v. Laws* (1993) 12 Cal.App.4th 786, 789.) The victim, who was standing near the actual target of the shooting, was killed. (*Ibid.*) At trial, the prosecution argued defendant could be found guilty as the actual shooter or, alternatively, as a direct aider or abettor of the shooting by one of the other men in the car. (*People v. Laws* (Jan. 22, 1993, C009984) [nonpub. opn. portion] (*Laws*).) The trial court instructed the jury on direct aider/abettor liability using CALJIC No. 3.01 and on the natural and probable consequences doctrine using CALJIC No. 3.02, which read, "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged was a natural and probable consequence of such originally contemplated crime."

After trial, defendant appealed and raised several issues with CALJIC No. 3.02. (*Laws*, *supra*, C009984.) We determined the issues were harmless error, saying, "Each of defendant's arguments fails for the simple reason that the challenged portion of CALJIC No. 3.02 (which addressed vicarious liability for the natural and probable consequences of the originally contemplated crime) was inapplicable under the facts of this case and, thus, was superfluous." (*Ibid.*)

We reviewed the prosecution's theory of the case, concluding that, "the vicarious liability theory of guilt was predicated on defendant's aiding and abetting [the codefendant's] act of shooting toward [the target victim], which resulted in [the actual victim's] death, not defendant's aiding and abetting some other criminal act of which the shooting was a natural and foreseeable consequence. Stated another way, based on the

2

evidence in this case, defendant either was guilty of aiding and abetting the shooting or was not guilty of aiding and abetting any crime.  [¶] . . . Thus, if guilty at all on a theory of vicarious liability, defendant was guilty of aiding and abetting the predicate crime of murder (the shooting resulting in death), not of aiding and abetting some other offense of which murder was a natural and probable consequence.

"Because the challenged portion of CALJIC No. 3.02 was superfluous and the jury was told to disregard inapplicable instructions (CALJIC No. 17.31), and because the irrelevant natural and probable consequences language was not inherently likely to have misled the jury, defendant was not prejudiced by any deficiencies in that portion of CALJIC No. 3.02.  (Cf. *People v. Dyer* (1988) 45 Cal.3d 26, 63; *People v. Rollo* (1977) 20 Cal.3d 109, 123 [the giving of an irrelevant instruction is 'usually harmless, having little or no effect "other than to add to the bulk of the charge" '].)"  (*Laws*, *supra*, C009984.)

On February 13, 2020, defendant filed a petition for resentencing under section 1170.95.  The petition alleged a "complaint, information, or indictment was filed against [defendant] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," that defendant was convicted of murder at trial under the felony-murder rule or the natural and probable consequences doctrine, and that defendant "could not now be convicted of 1st or 2nd degree murder, because of the changes made to . . . sections 188 and 189, effective January 1, 2019."  Defendant requested appointment of counsel.

The trial court issued a written order denying the petition.  The court recited the factual summary of the case, as set forth in the direct appeal opinion, then noted the jury had not been "instructed as to felony murder."  As to the natural and probable consequences instruction, the trial court excerpted our discussion of the natural and probable consequences doctrine and denied the petition, finding defendant would have

3

been found guilty of murder even without the natural and probable consequences instruction.

DISCUSSION

I

*Applicable Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, revised the felony-murder rule in California "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended the definition of malice in section 188, revised the definition of the degrees of murder to address felony-murder liability in section 189, and added section 1170.95, "which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions."[2] (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, citing Stats. 2018, ch. 1015, §§ 2-4.)

As amended, section 1170.95, subdivision (a) allows a petitioner to "file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced . . . when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder [or] murder under the natural and probable consequences doctrine . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder . . . . [¶] (3) The petitioner could not presently be

---

[2]     More recently, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021. ch. 551) made various amendments to section 1170.95, which are discussed as relevant below.

4

convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."

Subdivision (c) of section 1170.95 sets forth the process for the trial court to consider such a petition. Under section 1170.95, subdivision (c), the court must appoint counsel, provide an opportunity for briefing, and then determine if the petitioner has made a prima facie showing that the petitioner is entitled to relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 957-958.) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

## II

### *The Defendant Is Not Entitled To Relief*

Defendant contends the trial court erred by denying his petition for resentencing and failing to issue an order to show cause. According to defendant, the court first erred when it failed to appoint counsel and receive briefing from the parties, then erred again by engaging in "judicial fact-finding" when it considered the analysis from the direct appeal opinion.

We agree the trial court erred when it issued a decision without appointing counsel or receiving briefing from the parties. While briefing was occurring in this case, our Supreme Court issued its decision in *Lewis*, concluding "that the statutory language and legislative intent of section 1170.95 make clear that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'

5

(§ 1170.95, subd. (c).)"[3] (*People v. Lewis*, *supra*, 11 Cal.5th at. p. 957.) Under *Lewis*, the trial court's error is assessed for prejudice using the standard enunciated by *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, at p. 974.) In other words, defendant "must therefore 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' " (*Ibid.*)

To assert he would have obtained a better result but for the error, defendant's overarching argument is that the trial court was incorrect to rely on the direct appeal opinion because it was "replete with 'judicial factfinding' " and did not establish whether the jury found defendant "guilty on a permissible theory, a forbidden theory, or some combination thereof." Thus, the opinion could not have precluded defendant's success on the petition, and counsel would have been able to conduct further investigation into defendant's claims, offer additional evidence, or make arguments "in support of a prima facie case," requiring the trial court to decide the petition differently. Because defendant's harmless error argument is intertwined with the merits of his claim that the court engaged in judicial factfinding, we consider the issues together, and find no merit in defendant's contentions.

When making a prima facie determination under section 1170.95, subdivision (c), a trial court may "rely on the record of conviction in determining whether that single prima facie showing is made." (*People v. Lewis*, *supra*, 11 Cal.5th at p. 970.) Thus, if the record of conviction establishes the petition lacks merit, the trial court may deny the petition without conducting further proceedings. (*Id.* at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly

---

**3** The parties submitted briefing on the effects of *Lewis* and, later, Senate Bill No. 775 on the issues on appeal.

6

meritless"].) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . the 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)

Here, the trial court relied on the opinion from defendant's direct appeal, which considered the role CALJIC No. 3.02, the jury instruction on the natural and probable consequences doctrine, played in defendant's trial. In the opinion, we concluded the jury instruction was "irrelevant," "inapplicable," and "superfluous" in that it did not apply to the charges at issue in the case. (*Laws*, *supra*, C009984.) Noting the lack of any target offense other than murder, we determined that, if defendant was guilty under any theory of vicarious liability, it could only have been as a direct aider/abettor, and not as an aider/abettor under the natural and probable consequences doctrine. (*Ibid.*) This conclusion, and the trial court's later adoption of that conclusion, was *not impermissible* "factfinding" under *Lewis*. The harmless error analysis in the direct appeal opinion did

7

not weigh any facts in the case or resolve any inconsistencies in the evidence.  Rather, it considered the legal effect the jury instruction had on the case and on the jury's verdict. (See *People v. Merritt* (2017) 2 Cal.5th 819, 830 [jury instruction harmless error analysis not "appellate factfinding" when it assesses "what effect the error had on the verdict"].) We are similarly unpersuaded by defendant's contention that the appellate opinion failed to make sufficiently specific findings and left unresolved whether defendant had been convicted under a now "forbidden theory"; the opinion is clear that defendant was not and could not have been convicted under a natural and probable consequences theory, and that is all that was required to support the trial court's decision.

Likewise, the trial court's application of that conclusion in the context of defendant's section 1170.95 petition did not require the trial court to exercise any discretion or apply facts from the case to a legal framework.  Instead, the trial court simply took the opinion's conclusion that the natural and probable consequences instruction could not have applied in the case to its logical endpoint:  that defendant's conviction did not implicate the natural and probable consequences doctrine.  (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [considering jury instructions as part of prima facie analysis under § 1170.95].)  Thus, defendant's allegations that he was convicted under the natural and probable consequences doctrine and could not now be convicted of murder because of changes to the natural and probable consequences doctrine were contradicted by the record of conviction, and he was ineligible for relief.

Defendant argues that the changes made to section 1170.95 by Senate Bill No. 775 compel a different result because the changes limit the ability of the trial court to engage in "improper judicial factfinding" in that they preclude the trial court from considering appellate opinions for facts beyond the procedural history of the case.  As explained, however, the trial court's consideration of the record of conviction comported with *Lewis* and did not constitute "judicial factfinding."  Nor do we agree that the trial court's consideration of the appellate opinion extended beyond what was permissible under the

amended section 1170.95 because, as noted, the court relied only on the opinion's legal conclusions as to the jury instructions, the jury's verdict, and the relationship between the two. Thus, even assuming Senate Bill No. 775's changes apply, defendant was still ineligible for relief based on his record of conviction.

The trial court did not engage in impermissible factfinding when it read the *Laws* opinion to mean that defendant could not have been found guilty under the natural and probable consequences doctrine. It is not reasonably probable that the appointment of counsel or receipt of briefing would have changed this; counsel could not have changed the underlying jury instructions, verdict, or the theory used to find defendant guilty. Defendant was ineligible for relief under section 1170.95 because he was not convicted of murder under any eligible theory and the trial court did not prejudicially err when it denied his petition.

DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Hoch, J.

/s/_____
Renner, J.

9