Filed 4/19/21  P. v. Martinez CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B305289 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.BA481185) |
| v. | |
| FRANCISCO MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

A.William Bartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Francisco Martinez appeals from his conviction for robbery. He contends the court erred by denying his request to sanitize his prior robbery conviction to omit the fact that it was the same crime as the charged offense. He also argues that there was insufficient evidence to support giving a jury instruction on flight. We affirm.

## PROCEDURAL HISTORY

An information filed in 2019 charged appellant with the second degree robbery of B. Perez (Pen. Code § 211[1]). The information further alleged appellant suffered a prior conviction of a serious or violent felony, a 2011 robbery (§§ 667, subds. (a)(1) and (d), 1170.12, subd. (b)) and a prior felony conviction for spousal abuse in 2016 (§ 273.5, subd. (a)[2]

On December 19, 2019, the jury found appellant guilty of second degree robbery. Appellant admitted his prior robbery conviction and the court found the related allegations to be true. The court sentenced appellant to the upper term of five years, doubled for the prior strike conviction, for a total of ten years in state prison. The court struck the five-year enhancement allegation under section 667, subdivision (a)(1). Appellant timely appealed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] The information further alleged that during the commission of the offense, appellant inflicted great bodily injury upon the victim within the meaning of section 12022.7, subdivision (a). The prosecution withdrew this allegation during trial.

# FACTUAL BACKGROUND

## I.    Prosecution Evidence

G. Rosas testified that she was walking from her home to the store with her sister around 7:45 p.m. on September 7, 2019. As they walked south on Broadway in Los Angeles, they saw appellant, their neighbor, and stopped to say hello. During this conversation, another man walked up to them, whom Rosas did not know. Rosas did not remember whether the other man said anything when he walked up. Rosas and her sister then resumed walking to the store. On her way home from the store, she saw the other man again and he appeared to be injured.

B. Perez, the victim, testified that he was walking home from a friend's house on the evening of September 7, 2019. He had been drinking alcohol earlier that day, but denied drinking at the time of the incident. Perez was carrying a speaker and a container of juice. After defense counsel showed video surveillance footage of the incident taken from a nearby store, Perez acknowledged that he stopped for a moment next to appellant and two women, but he did not remember saying anything to them. He did lift his right arm and gesture while standing next to the group, as shown in the video, but testified that he did not remember why he did so.

After Perez resumed walking down Broadway, Perez testified that appellant approached him on a bicycle. Appellant told Perez he wanted the speaker Perez was carrying; Perez said "no." Perez testified that he tried to hold onto the speaker, but appellant "took it." Appellant hit him, causing him to lose consciousness. He fell to the ground, scraping his face and injuring his eye. When he regained consciousness, the police were there and his speaker was gone.

Perez told a police officer at the scene that his first encounter with appellant was when appellant came at Perez from behind and tried to reach into his pocket where he keeps his wallet. Perez acknowledged that this was not visible from the surveillance video. He also told police that while he was on the ground, appellant continued to try to take his wallet, but Perez pushed him away.

Perez met with Los Angeles Police Department (LAPD) Detective Gabriel Nily approximately a week after the incident. Perez told Nily that he had been hit in the face and lost consciousness, and that the assailant took his portable speaker. Perez acknowledged that he did not mention the speaker to the police at the scene immediately after the incident. At trial, Perez identified on the video where he was holding the speaker in his left arm before the incident. Perez also testified that he recalled, and the video showed, that appellant "took the speaker . . . then hit me."

LAPD Officer Chad Fillinger testified that he arrived at the scene on September 7, 2019 after being flagged down by a passerby. Fillinger spoke with Perez in English, although Perez seemed to speak primarily Spanish. Perez was sitting on the ground with injuries to his face; he appeared dazed. Fillinger testified that Perez also appeared "potentially" intoxicated because he had difficulty speaking, his speech was slurred, and he was unable to stand or focus. Perez had his wallet and cell phone. Fillinger did not see any other personal items nearby. With assistance in Spanish from a passerby, Perez told Fillinger that a man came up from behind and tried to grab his wallet out of his pocket, but he stopped the suspect and turned toward him, then the suspect punched him three times in the face with his

4

fist.

Detective Nily testified that he retrieved video surveillance footage from two cameras at a bicycle shop near the incident. He reviewed and discussed the video footage at trial, including the portion where it appeared the victim was struck by the assailant. He described the video as showing appellant grabbing the speaker and Perez pulling it back, then appellant punching Perez in the face. Afterward, appellant walked with his bicycle northbound on Broadway. Nily noted that the video did not show the victim on the ground, except for one of his feet, which twitched and then remained motionless for several minutes. Afterward, the video showed the victim getting up. Nily also testified that he did not see on the video anyone other than the assailant get close enough to take anything from the victim while he was on the ground.

## II.    Defense Evidence

Appellant testified that just before the incident he was walking home northbound on Broadway. He stopped to talk to Rosas and her sister. During the conversation, he noticed Perez out of the corner of his eye. He heard Perez say "muchachitas" in Spanish to the girls, which he understood to mean Perez was trying "to hit on them" in a "sexual way." This made appellant "really mad" because one of the girls was underage.

Perez started walking northbound and appellant began to follow him, planning "just to hit him because he sa[id] something bad or disrespectful to the girls." Perez was holding two objects and appellant thought Perez was going to hit him with one of them, so appellant "grabbed it so I could start a fight" and to ensure a "fair fight." He did not remember what the object was. As he tried to pull the object away from Perez, Perez resisted.

Then appellant hit Perez one time, knocking Perez down. After that, appellant retrieved his bicycle and began to walk home. As he passed Perez, appellant bent down and told him "don't talk to the girls like that." Appellant denied taking anything from Perez. When the prosecutor showed portions of the surveillance video during trial, appellant denied that the video showed him picking anything up off the ground after hitting Perez; he claimed that was when he bent down to speak to Perez. After the incident, appellant went home.

Appellant was arrested on September 13, 2019. After his arrest, he denied to police that he had punched Perez. Appellant admitted at trial that he was convicted of felony robbery in 2011 and felony spousal abuse in 2016.

## DISCUSSION

### I.    Evidence of Prior Conviction

Appellant contends the trial court erred in refusing his request to sanitize his prior robbery conviction, which the prosecution used to impeach him at trial. We find no abuse of discretion and therefore affirm.

A.    *Background*

In anticipation of appellant's testimony, the prosecutor sought to introduce evidence of two of appellant's prior felony convictions for purposes of impeachment: the 2011 robbery and the 2016 spousal abuse conviction. Defense counsel conceded that they were crimes of moral turpitude and felonies, but requested that they be sanitized to eliminate mention of the specific felony. Defense counsel argued that telling the jury about a prior robbery by appellant would be more prejudicial than probative, as "it might lead the jury to believe that he is guilty of this crime simply because he has a propensity to commit

6

robberies." Defense counsel also argued that identifying the specific crime would not "help the jury determine whether or not my client was being truthful or credible," and suggested that the prosecutor could refer to the prior convictions as "crimes of moral turpitude."

The prosecutor responded with concern that the jury might not understand the meaning of "a crime of moral turpitude." The prosecutor also argued that "some felonies reflect more on someone's credibility than others, and I think robbery is one of those," and further noted that many jurors did not know which crimes are felonies.

The court found that defense counsel's proposal would not "give the jury any guidance" in evaluating the crimes as relevant to appellant's credibility or veracity; instead, it would be "information in a vacuum." The court concluded that the prosecution was "entitled to present these crimes of moral turpitude for purposes of impeachment." After weighing any potential prejudice against the probative value of identifying the precise offenses, the court excluded any reference to the underlying facts of the priors. However, the court found it was not "sufficient to tell the jury they're crimes of moral turpitude, and that is because there's nowhere in the jury instructions . . . that gives the jury any understanding of what a crime of moral turpitude is." The court concluded that "to the extent that the description of the offenses goes to the jury understanding information that is admissible, the court believes that the People should be entitled to note the nature of [the] offenses." The court also noted that it would instruct the jury with CALCRIM No. 316, which states that if the jury found a witness had been convicted of a felony, it could "consider that fact only in

evaluating the credibility of the witness's testimony."

B.    *Legal framework*

A prior felony conviction involving moral turpitude is admissible to impeach a witness.  (Cal. Const., art. I, § 28, subd. (f)(4); Evid. Code, § 788; *People v. Anderson* (2018) 5 Cal.5th 372, 407.)  "'Evidence of prior felony convictions offered for this purpose is restricted to the name or type of crime and the date and place of conviction.'"  (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 88–89 (*Gutierrez*), quoting *People v. Allen* (1986) 42 Cal.3d 1222, 1270.)

The admission of a prior felony conviction for impeachment purposes is subject to the trial court's discretion to exclude evidence as more prejudicial than probative under Evidence Code section 352.  (*Gutierrez, supra,* 28 Cal.App.5th at p. 89, citing *People v. Anderson, supra*, 5 Cal.5th at p. 407.)  "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify."  (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).)

We review the trial court's ruling for an abuse of discretion. (*People v. Anderson, supra*, 5 Cal.5th at p. 407.)  "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark, supra,* 52 Cal.4th at p. 932.)

8

C.    *Analysis*

Appellant does not dispute that the two convictions admitted involved moral turpitude.  He argues that the trial court abused its discretion in refusing to sanitize his robbery conviction, because the fact that it was a robbery had minimal probative value but a high degree of prejudicial similarity to the charged crime.[3]

We find no abuse of discretion here.  The court expressly engaged in the appropriate balancing analysis under Evidence Code section 352. It allowed the prosecution to use only two prior felony convictions reflecting crimes of moral turpitude, and further limited their introduction to the name and the date of each conviction.  The court considered the potential prejudice arising from the similarity between the prior robbery conviction and the charged crime, but agreed with the prosecution that describing the conviction only as a "crime of moral turpitude" could have confused the jury.  The trial court also properly found that evidence of the prior robbery conviction was relevant to the jury's ability to evaluate appellant's credibility.  (See *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 [prior convictions for burglary, robbery, and other theft-related crimes are probative of credibility]; *Clark, supra,* 52 Cal.4th at p. 932.)

We reject appellant's assertion that the court should have weighed the similarity between the offenses more heavily. "'Although the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 722; see also *Clark,*

---

[3]Appellant does not challenge on appeal the denial of his request to sanitize his other prior conviction for spousal abuse.

9

*supra,* 52 Cal.4th at p. 932 [finding no abuse of discretion in permitting the prosecutor to impeach the defendant with prior robbery convictions that were identical to the charged offenses]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139 [holding that a prior conviction for assault with a deadly weapon on a peace officer was admissible to impeach a defendant charged with attempted murder of a police officer].)

Notably, none of the cases appellant cites finds error arising from a trial court's refusal to sanitize a prior conviction. Instead, each reflects the trial court's broad discretion to balance the competing factors at issue.  (See *People v. Massey* (1987) 192 Cal.App.3d 819, 825 [rejecting appellant's argument that admission of sanitized convictions was prejudicial because jury might speculate as to the nature of prior offenses]; *People v. Foreman* (1985) 174 Cal.App.3d 175, 182 [upholding use of sanitized identical prior convictions, but also noting that "we would have upheld the admission of the prior burglary as a burglary"].)

The court also mitigated any potential prejudice by instructing the jury that it could consider the prior convictions only in evaluating appellant's credibility.  "'Any prejudice that the challenged information may have threatened must be deemed to have been prevented by the court's limiting instruction to the jury.  We presume that jurors comprehend and accept the court's directions.'" (*Gutierrez, supra,* 28 Cal.App.5th at p. 91, quoting *People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

Finally, in the absence of any error under Evidence Code section 352, we also reject appellant's constitutional claims.  The routine and proper application of state evidentiary law does not impinge on a defendant's due process rights. (*People v. Hovarter*

(2008) 44 Cal.4th 983, 1010.)

## II.   **Flight Instruction**

Appellant contends it was error to instruct the jury regarding flight, arguing there was insufficient evidence that he fled after the incident.  We disagree.

A.   *Background*

During discussion of the jury instructions, appellant objected to the use of CALCRIM No. 372 regarding use of appellant's flight as evidence of his guilt.  The court overruled the objection, explaining:  "I thought about that when I was doing the [jury instruction] packet I had, and the facts are a little bit different than some cases we see where, you know, something happens, and people run out of the surveillance film.  And this is more of a departure as opposed to a flight, but out of an abundance of caution, I think it should be given."

The court instructed the jury with CALCRIM No. 372 as follows:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct[.] However, evidence that the defendant fled cannot prove guilt by itself."

B.   *Legal framework*

"'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt."'  [Citations.]  Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.'" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328 (*Bonilla*), quoting *People v. Crandell* (1988) 46 Cal.3d

11

833, 869; see also *People v. Bradford* (1997) 14 Cal.4th 1005, 1055 [noting that "'[F]light requires neither the physical act of running nor the reaching of a far-away haven,'" but does require "'a purpose to avoid being observed or arrested'"]; § 1127c.) "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Bonilla, supra,* 41 Cal.4th at p. 328, citing *People v. Turner* (1990) 50 Cal.3d 668, 694–695.)

We review the trial court's decision to give a flight instruction for substantial evidence. (See *People v. Boyette* (2002) 29 Cal.4th 381, 438-439; see also *People v. Turner, supra,* 50 Cal.3d at pp. 694–695.)

C.    *Analysis*

Appellant contends there was insufficient evidence that he fled, meaning that he "took action to avoid detention or arrest" following his confrontation with Perez. In support, appellant points to the trial court's comment that his conduct was "more of a departure as opposed to a flight."

We conclude that substantial evidence supports the flight instruction. The undisputed evidence showed that appellant immediately left the scene following his confrontation with Perez. There was also evidence from which the jury could conclude that he did so immediately after taking the speaker from Perez. After rendering Perez unconscious, appellant did not attempt to aid him or call for assistance. These circumstances surrounding appellant's departure could give rise to an inference of consciousness of guilt. (See *Bonilla, supra*, 41 Cal.4th at p. 329 [finding the circumstances supported flight instruction where the

defendant immediately left the scene and during the attack on the victim, the defendant "did not call out to him, attempt to aid him, or call for or go for assistance (acts that might have led to Bonilla's detection at the scene or otherwise connected him with the attack)"]; *People v. Jurado* (2006) 38 Cal.4th 72, 126 [failure to use call box to summon assistance at crime scene before leaving supported flight instruction].) Whether termed as a "departure" or a "flight," the evidence here supported an inference that appellant left the scene to avoid detection or arrest. (See *People v. Turner*, supra, 50 Cal.3d at p. 694 ["A flight instruction is proper whenever evidence of the circumstances of defendant's departure from the crime scene or his usual environs, or of his escape from custody after arrest, logically permits an inference that his movement was motivated by guilty knowledge."].) As such, the instruction was warranted, regardless of whether the jury could have reached the opposite conclusion that appellant simply left to return home.[4]

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.                     CURREY, J.

---

[4]Because we find no error, we reject appellant's argument, asserted in his reply brief, regarding cumulative error.


13