Filed 9/28/23  P. v. Roberson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096362 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE016457) |
| v. | |
| CLIFFORD DEVON ROBERSON, | |
| Defendant and Appellant. | |

Defendant Clifford Devon Roberson appeals from a jury verdict finding him guilty of assault with intent to commit oral copulation and assault by means likely to produce great bodily injury related to an incident in which he physically assaulted J.D. and demanded oral sex from her.  He contends the prosecutor committed prejudicial misconduct by eliciting his testimony on a collateral matter for the purpose of impeaching him with otherwise inadmissible details about his prior robbery conviction. Relatedly, he claims the trial court abused its discretion by overruling his objection to the evidence, and by indicating that it would allow the prosecutor to introduce testimony

1

from the victim of that robbery and other evidence concerning that robbery as impeachment evidence.

Defendant further claims the trial court abused its discretion by allowing the prosecutor to elicit his testimony about the details of his prior conviction for attempted oral copulation of an unconscious person under Evidence Code section 1108, which he argues was cumulative.[1] Finally, he seeks to preserve his argument that section 1108 unconstitutionally deprived him of a fair trial under the federal and California Constitutions.

We reject defendant's claims and affirm the judgment.

## FACTS AND PROCEEDINGS

*Prosecution Evidence*

On September 10, 2019, after handing out food to unhoused people through a nonprofit organization, J.D. went to her mother's apartment. At around 3:00 a.m. on September 11, J.D. walked toward a nearby library to wait for her boyfriend's sister to pick her up. As she walked toward the library, defendant--whom J.D. had never met-- approached her for a cigarette. J.D. gave him a cigarette and continued walking. A short time later, defendant grabbed her by the hair, pushed her head into a bench several times, grabbed her throat, hair, and face, and tried to choke her. Defendant motioned with his hands for J.D. to perform oral sex on him and began to unbuckle his pants and pull his pants down.

J.D. screamed, but no one responded. She then attempted to stall by suggesting they go to the library, where it was quieter, and she left her bags on the park bench. As they walked toward the library, J.D. took her cellphone out of her pocket, called 911, and put the phone back in her pocket. When the 911 dispatcher answered her call, defendant

---

[1] Further undesignated statutory references are to the Evidence Code.

2

tried to grab the phone and was able to touch it before J.D. put it away; she told defendant the call was an accident.[2]

J.D. led defendant to the back area of the library parking lot, where she hoped to be loud enough to alert someone. Defendant was frustrated that she was "being so loud." J.D. suggested they go back to the park bench because her things were there, and she did not want them to be stolen. She was trying to buy time until help or her boyfriend's sister could arrive.

As J.D. and defendant walked back towards the park, police officers arrived. She accepted the officers' offer to give her a ride home; once separated from defendant, she told the officers what had happened. An officer noticed that J.D. had some "newer" looking bruising and scratches on her neck.

A few hours after the assault, a forensic investigator took scrapings from under defendant's fingernails. A criminalist determined there were three contributors to the DNA profile obtained from the scrapings of a fingernail on defendant's right hand, with ratios of 53 percent, 27 percent, and 20 percent. Defendant was the 53 percent contributor, and J.D. was the 27 percent contributor. The criminalist testified it is rare for something other than intimate or violent conduct to cause that amount of a person's DNA to be under a subject's fingernails.

*Defendant's Testimony*

Defendant testified that he saw J.D. on the sidewalk of the park and asked her for a cigarette. He noticed she was crying and upset. She gave him a cigarette, and they had a conversation. As he was leaving, J.D. asked him if he had any methamphetamine, and he

---

[2] A transcript of the 911 call, which was played for the jury, reflects that J.D. stated: "I didn't even touch the number. Here, I'm trying to get off!" J.D. testified that she was explaining to defendant that the call was an accident, although she reiterated that she was intending to make the call.

3

told her no.  About five minutes later, he declined J.D.'s offer of oral sex.  He continued walking with her because he felt bad for her.  He denied assaulting her or demanding oral sex from her, and claimed he only made physical contact with her to put drugs in her palm with his left hand.

They walked to the library.  J.D. kept stopping because she was receiving text messages on her phone, but she refused to tell him what the text messages were about.[3] She began yelling and acting obnoxiously.  He tried to grab her phone and touched it with his right hand, but she put it away.  He did not hear a 911 call coming from the phone.

Defendant felt unsafe and walked back to the park.  He saw a police car pull up and approached to speak with one of the officers.  Shortly after, he was placed in the back of a patrol car and interviewed by Sacramento Police Officer Thomas MacLean.  A week later, he was interviewed by Detective Loriaux.[4]

While testifying, defendant admitted that he committed a felony of moral turpitude on September 9, 2019, and that he was convicted of an earlier felony of moral turpitude in 2017, oral copulation of an unconscious person in 2015, possession of rock cocaine for sale in 2008, and a misdemeanor crime of moral turpitude in 2008.

---

[3] J.D. testified that her phone was set to vibrate during the incident, so she was not aware she had received text messages "until later."  She read text messages that her boyfriend sent her while the incident was taking place, including messages reading, "you stupid bitch," and "you are going to piss me off.  Piss me the fuck off, aren't you?"  J.D. claimed she was not concerned by the messages and that her boyfriend did not cause the injuries she suffered on the night of the incident.  J.D. told law enforcement about "difficulties" in her relationship and acknowledged an argument before she went to her mother's house the night preceding the assault.

[4] We will address these interviews in greater detail in the Discussion, *post*.  Detective Loriaux's first name does not appear in the record.

*Verdict and Sentence*

The jury found defendant guilty of assault with intent to commit oral copulation (Pen. Code, § 220; count one), and assault by means likely to produce great bodily injury (*id.*, § 245, subd. (a)(4); count two). In bifurcated proceedings, the trial court found true six aggravating circumstances. (Rules of Court, rule 4.421(a)(1), (b)(1), (2), (3), (4) & (5).) On June 3, 2022, the court sentenced defendant to the upper term of six years in prison on count one and to the upper term of four years on count two, stayed under Penal Code section 654.

Defendant timely filed notice of appeal. The case was fully briefed in July 2023 and was assigned to the current panel on July 31, 2023.

## DISCUSSION

### I

*Impeachment Evidence*

Defendant contends that the prosecutor committed prejudicial misconduct by eliciting his testimony on a collateral matter--his out-of-court statements related to a cellphone he possessed at the time of his arrest for the assault--in order to impeach him with details about his prior robbery conviction that were otherwise inadmissible both under the trial court's in limine order and under section 352. Relatedly, he argues that the trial court abused its discretion by overruling defense counsel's objections to the alleged misconduct and by indicating that it would admit evidence regarding details of the robbery for impeachment, which caused the parties to stipulate that defendant made false statements both out of court and during his trial testimony. As we will explain, we conclude the trial court did not abuse its discretion by allowing the prosecutor to question defendant about the challenged matter, and the prosecutor did not commit misconduct by eliciting defendant's testimony.

5

A. *Background*

The People moved in limine to introduce evidence of defendant's prior felony convictions if he chose to testify, including the 2019 robbery (Pen. Code, § 211) for which he was convicted in 2020.[5] The trial court observed that for crimes of moral turpitude, including robbery, "normally, we just ask whether or not he was convicted of these." Defense counsel requested that if evidence of the robbery conviction was admitted, it be sanitized by referring to it as a " 'crime of moral turpitude.' " However, the court initially concluded the robbery conviction was probative of defendant's veracity and did not need to be sanitized because the charged offenses did not include theft or robbery, and thus were not so similar to the prior conviction as to be "prejudicial in terms of the type, compared to our current case."

Following further argument, the trial court agreed with defense counsel that robbery was similar to the charged offenses because both involved an accusation of force. The court stated: "I think it would be reasonable to call it a crime -- a felony involving theft. I think that would be okay, if you'd rather have that." Defense counsel agreed, and the court asked the prosecutor if he "hear[d] that." The prosecutor confirmed he had.

Defendant did not testify on direct examination about his possession of a cellphone at the time of his arrest or his 2020 robbery conviction. On cross-examination, defendant testified that he was interviewed by Officer MacLean when he was placed in

---

[5] This robbery was committed on September 9, 2019. The items taken in the robbery included the cellphone that was found in defendant's possession at the time of his arrest for the crimes committed against J.D. in the early morning hours of September 11, 2019. Defendant was convicted of the robbery in 2020, long before his 2022 trial for the crimes against J.D. Defendant's statements to both the arresting officer on September 11, 2019, and the detective investigating the robbery on September 17, 2019, are the subject of his claim regarding evidence of a collateral matter that was elicited by the prosecutor and permitted by the trial court, i.e., defendant's false statements to law enforcement in 2019 regarding the cellphone that was the subject of the 2019 robbery.

6

the back of a police car at the scene. MacLean asked if J.D. was defendant's friend or girlfriend; defendant responded that she was a friend. When asked how long he knew J.D., he said that he did not know but that it was "probably like some months." At trial, defendant acknowledged he did not know J.D. personally, had not had a conversation with her before the night in question, and did not know her phone number. He testified that he had "seen her around" "[m]aybe six months" before the assault.

The prosecutor then asked defendant if he would have been lying if he had told MacLean he did not have a phone while being interviewed. Defendant responded: "I had my phone. I had a phone. I didn't have her phone or her number." Defendant confirmed that the phone MacLean discovered in his possession--a blue Samsung Galaxy Note--was his phone. He acknowledged it would have been a lie if he had told MacLean he did not have a phone, and he admitted he told MacLean he did not have a phone, but he explained that he thought MacLean was asking him if he had a home landline. Defendant admitted he had used the cellphone the day before the incident. Defense counsel did not object to this line of questioning.

The prosecutor next asked defendant whether he recalled being interviewed by Detective Loriaux on September 17, 2019 (eight days after the robbery and six days after the assault on J.D.), and whether he recalled telling Loriaux that he "had just found that phone." Defendant responded that he did not, and he then asked the prosecutor for more information about where the interview occurred. Defense counsel objected based on relevance, but the trial court overruled the objection subject to a motion to strike. The prosecutor again asked whether defendant remembered telling Loriaux that he had "just found that phone." Defendant testified he did not remember talking to Loriaux, but if he had, he would not have lied about where he had acquired the phone.

7

The prosecutor asked if defendant committed a crime involving moral turpitude "at a Wendy's" on September 9, 2011.[6] Defendant responded that he had already been convicted of that crime. The prosecutor asked whether the Samsung phone in his possession at the time of the assault on J.D. was connected to the crime for which he was convicted (in 2020). Defense counsel objected on the basis that the prosecutor was "talking about a prior conviction for credibility purposes." The court overruled the objection.

The prosecutor then asked, "Now, where did that phone come from, or was it connected with this crime of moral turpitude?" Defendant responded: "I can't say for sure if that phone came from a crime," and then testified that the phone had been given to him by "[s]omebody that [he] knew," although he could not remember how long he had possessed it. The prosecutor asked defendant whether it was "actually true that the phone was one that you took from the victim of your crime of moral turpitude on or about September 9th of 2011 [*sic*]." Defendant said it was not the same phone.

On rebuttal, Officer MacLean testified that he interviewed defendant on the morning of the charged offenses. MacLean asked defendant if he had a phone number; defendant responded that he did not have a phone. MacLean subsequently found a blue Samsung Galaxy cellphone in his bag. He also said J.D. was his friend and that he had known her for a few months.

The prosecutor stated his intent to call Detective Loriaux as a witness, but then recalled that the parties had reached a stipulation. After the parties met in chambers, the following stipulation was read to the jury: "The People and defense stipulate that the phone that defendant has testified to, the Galaxy Note 9, was taken in a theft offense on

---

[6] The referenced year appears to be a misstatement; the parties' subsequent stipulation indicated that the date of that offense was September 9, *2019*.

or about September 9th of 2019, and the defendant was convicted of that offense." The parties further stipulated that defendant was convicted of that offense in February 2020.

After the prosecutor's closing argument, defense counsel made a record of the conference preceding the stipulation. Counsel stated that he had objected to any questions about the cellphone on relevance grounds because the evidence was "collateral to the case, it's prior bad acts, it's a different crime, different investigation," but the trial court had ruled that the evidence was relevant to defendant's credibility. Counsel recalled that the prosecutor had argued the evidence was relevant to defendant's credibility because it contradicted his trial testimony, which counsel asserted is "what [he was] worried about in the first place, and why [he] objected to any questions about that phone, because it was going to lead to opening doors." The court responded that the cellphone evidence contradicted defendant's trial testimony, but it also contradicted his statements to law enforcement.

Defense counsel represented: "So we get to the point where [the prosecutor] -- first of all, Your Honor did not agree with my objection in terms of its [*sic*] [§] 352 and so on, so forth. But we went a step further, and [the prosecutor] talked about his intent to introduce actual evidence concerning that phone." Recognizing that eliciting testimony from Detective Loriaux regarding the circumstances surrounding defendant's acquisition of the phone would require eliciting a hearsay statement by the robbery victim, the prosecutor asserted he would introduce testimony from the victim and photographs from that crime. The court had indicated that it would allow that evidence; accordingly, defense counsel proposed a stipulation to avoid the victim's testimony. The court observed that the stipulation also avoided informing the jury that the prior crime was a robbery, as opposed to "just a theft."

During closing argument, the prosecutor emphasized that the jury could disregard the entirety of defendant's testimony because he lied both out of court and during his trial testimony. He made multiple references to defendant's statements about the phone.

9

While he argued defendant lied about various topics, he characterized defendant's testimony about receiving the phone from a "friend" to be "one of the most galling lies that he got up on the stand to say." The prosecutor noted that the jury was required to accept as true the parties' stipulation that defendant "took [the phone] or was convicted of a theft offense for taking that phone just a day and a half or so before he sexually assaulted [J.D.]"

B. *Applicable Law*

" '[A] defendant who elects to testify in his own behalf is not entitled to a false aura of veracity.' " (*People v. Beardslee* (1991) 53 Cal.3d 68, 95.) " '[B]y taking the stand, defendant put his own credibility in issue and was subject to impeachment in the same manner as any other witness.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 438.) Thus, evidence of a prior felony conviction necessarily involving moral turpitude, including a conviction for robbery, may be used for purposes of impeachment in any criminal proceeding. (Cal. Const., art. I, § 28, subd. (f)(2); § 788 ["For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony"]; *People v. Stewart* (1985) 171 Cal.App.3d 59, 64 [robbery involves moral turpitude].)

A prosecutor cross-examining a defendant may elicit relevant evidence that goes to the defendant's credibility, veracity, or motive, including by introducing evidence tending to show his character for honesty or dishonesty, and to show the existence of nonexistence of any fact testified to by him. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1054; *People v. Dykes* (2009) 46 Cal.4th 731, 764; § 780, subds. (e), (i).) The limitations on the use of character evidence set forth in section 1101 do not "affect[ ] the admissibility of evidence offered to support or attack the credibility of a witness." (§ 1101, subd. (c); see *People v. Abel* (2012) 53 Cal.4th 891, 928 [§ 1101, subd. (a)'s "restriction on the use of character evidence has no application when the evidence is offered on the issue of a witness's credibility"].) Notably, evidence of the circumstances

10

underlying a prior criminal conviction is admissible to impeach credibility if the proponent demonstrates that the evidence is relevant to disproving credibility. (*People v. Dalton* (2019) 7 Cal.5th 166, 214 (*Dalton*).)

However, section 352 gives the trial court the discretion to exclude collateral evidence if the probative value of the evidence is substantially outweighed by the probability its admission will create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226; *People v. Morrison* (2011) 199 Cal.App.4th 158, 164.) A court may also exercise its discretion under section 352 to exclude evidence of prior convictions or, as the trial court did here, to sanitize the descriptions of prior convictions where the nature of the unsanitized prior convictions would be more prejudicial than probative of the witness's credibility (*Dalton*, *supra*, 7 Cal.5th at p. 214; *People v. Castro* (1985) 38 Cal.3d 301, 305-306; *People v. Massey* (1987) 192 Cal.App.3d 819, 825), such as where the impeaching offenses are similar or identical to the current charges (*People v. Foreman* (1985) 174 Cal.App.3d 175). An appellate court reviews the trial court's rulings on admission of evidence under section 352 for abuse of discretion. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.) " 'To establish an abuse of discretion, defendant[ ] must demonstrate that the trial court's decision was so erroneous that it "falls outside the bounds of reason." [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.] An abuse of discretion will be "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Miracle* (2018) 6 Cal.5th 318, 346-347.)

" ' "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process." ' " ' [Citations.] " 'Under state law, a prosecutor who uses such

11

methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' " [Citations.] . . . Prosecutorial misconduct can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the misconduct was not 'harmless beyond a reasonable doubt.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 333-334.) It is misconduct for a prosecutor to *intentionally* elicit inadmissible testimony in violation of a court order (*People v. Tully* (2012) 54 Cal.4th 952, 1035; *People v. Crew* (2003) 31 Cal.4th 822, 839), although "merely eliciting evidence is not misconduct" (*People v. Scott* (1997) 15 Cal.4th 1188, 1218 [defendant's real argument was that the evidence was inadmissible]).

C. *Eliciting Testimony About Defendant's Ownership of the Phone*

As we have discussed, the prosecutor was generally entitled to elicit testimony from defendant tending to demonstrate his lack of credibility, including his prior false statements. (*People v. Carpenter*, *supra*, 21 Cal.4th at p. 1054, § 780, subds. (e), (i).) Further, evidence of the circumstances underlying defendant's prior conviction was admissible to impeach his credibility if the prosecutor demonstrated that the evidence was relevant to disprove his credibility. (See *Dalton*, *supra*, 7 Cal.5th at p. 214.)

Despite these principles, defendant contends the prosecutor committed prejudicial misconduct by eliciting defendant's testimony about a collateral matter--his out-of-court statements regarding his possession and ownership of the cellphone--in order to contradict that testimony with inadmissible details of the prior robbery conviction. Defendant further argues the trial court abused its discretion by overruling his objection to the evidence and by indicating that the prosecutor would be entitled to introduce testimony from the victim of the prior robbery and other evidence from that crime to prove the falsity of defendant's testimony and statements to law enforcement regarding his acquisition and ownership of the cellphone. His argument relies on *People v. Lavergne* (1971) 4 Cal.3d 735 (*Lavergne*).

12

In *Lavergne*, the defense attorney asked Oliver, a prosecution witness and accomplice, where he got the car used during the commission of the charged crime. Over the prosecutor's objection, Oliver replied that he bought it. The defense attorney then asked Oliver if the car was stolen, and he said it was not. The defense then sought to impeach Oliver's credibility with testimony from the owner of the vehicle. The prosecution objected, and the trial court sustained the objection under section 352. (*Lavergne*, *supra*, 4 Cal.3d at p. 741.) The Supreme Court affirmed. The court recognized that "collateral matters are admissible for impeachment purposes," but observed that "the collateral character of the evidence reduces its probative value and increases the possibility that it may prejudice or confuse the jury." (*Id.* at p. 742.) The court observed that "it appears that the defendant, on cross-examination, purposely elicited the testimony for the very purpose of impeaching the witness." (*Id.* at p. 743.) Recognizing that "[i]t seems apparent that the defense knew the origin of the [car] in advance," the court observed that the defense's questioning left Oliver in a bind. If he answered truthfully, "the defendant would have had the benefit of the admission of an irrelevant fact which would affect [his] credibility. But the witness denied it was stolen and defendant now wishes to bring otherwise inadmissible testimony in to impeach him." (*Id.* at pp. 743-744.) The court concluded: "A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted. [Citations.] This is especially so where the matter the party seeks to elicit would be inadmissible were it not for the fortuitous circumstance that the witness lied in response to the party's questions." (*Id.* at p. 744.)

The court further recognized that "[a] witness may have a strong reason to lie about the collateral fact which reason would furnish no motive to lie in his other testimony. Where such a situation exists, the possible inference that a witness false in part of his testimony is not to be trusted as to other parts is weakened." (*Lavergne*, *supra*, 4 Cal.3d at p. 743.) Recognizing that Oliver had not been charged with the theft of the

13

car used in the robbery, the court noted that he had a motive to lie about his ownership of the car that did not exist with respect to the rest of his testimony. (*Ibid.*)

At the outset, we agree with defendant that his testimony about his out-of-court statements was a collateral matter, although the People argue to the contrary. However, this designation is not dispositive in this case.

"[A] matter is 'collateral' if it has no logical bearing on any material, disputed issue. [Citation.] A fact may bear on the credibility of a witness and still be collateral to the case." (*People v. Contreras* (2013) 58 Cal.4th 123, 152.) The collateral nature of evidence is not evaluated in relation to whether it proves the existence or nonexistence of any fact attested to by a witness, it is tested by its ability to prove or disprove any issue pertaining to the criminal case itself, namely the guilt or innocence of the defendant. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) Here, the issue of whether defendant falsely told law enforcement that he did not have a phone, or legally possessed the phone found in his bag, had no "ability to prove or disprove any issue pertaining to the criminal case itself," and was thus collateral.

But *Lavergne* is not on point here. First, here the prosecutor did not cross-examine defendant "upon collateral matters for the purpose of eliciting something to be contradicted," and the matter the prosecutor sought to elicit was not "inadmissible were it not for the fortuitous circumstance that the witness lied in response to the party's questions." (*Lavergne*, *supra*, 4 Cal.3d at p. 744.) In *Lavergne*, the defense attorney asked the witness about how he had obtained the car used in the crime specifically to elicit the witness's untruthful testimony, and the witness's testimony was relevant only because he lied in response to the question, thereby calling his credibility into question. But here, defendant's previous false statements to law enforcement were relevant to his credibility irrespective of his answers at trial. This is because it was the falsity of the *previous statements themselves*, not the falsity of the answers to the questions about the statements, that was relevant. Thus, the prosecutor did not elicit something to be

14

contradicted, as was the situation in *Lavergne*; instead, he simply asked defendant about false statements he had previously made to law enforcement.

Defendant contends that the prosecutor's purported misconduct was "all the more egregious" because his out-of-court statements and the details of the robbery were inadmissible based on the trial court's in limine ruling sanitizing the conviction and, alternatively, under section 352. As we next explain, we disagree.

The trial court's in limine order was limited to the specific purpose of introducing the conviction to impeach defendant's credibility. (§ 788.) The court implicitly weighed the probative value of admitting evidence of defendant's prior conviction against the prejudicial effect of admitting a prior conviction similar to the charged offenses, and determined the evidence was inadmissible for that purpose. The court did not conduct a section 352 analysis regarding the admissibility of evidence of the prior conviction to impeach defendant's credibility related to out-of-court statements.

Alternatively, defendant argues that his out-of-court statements were inadmissible under section 352. He again relies on *Lavergne*, where the court recognized that "[a] witness may have a strong reason to lie about the collateral fact which reason would furnish no motive to lie in his other testimony. Where such a situation exists, the possible inference that a witness false in part of his testimony is not to be trusted as to other parts is weakened." (*Lavergne*, *supra*, 4 Cal.3d at p. 743.) There, the court recognized that the witness had not been charged with the theft of the car used in the robbery, and thus he had a motive to lie about his ownership of the car that did not exist with respect to the rest of his testimony. (*Ibid.*)

*Lavergne* is distinguishable here, because defendant not only lied to law enforcement at the time when he would have been motivated to lie about how he obtained the phone, he also lied during his trial testimony when no such motive existed. At the time of trial, he had already been convicted of the robbery that he later stipulated resulted in his acquisition of the cellphone at issue. Without objection by defense counsel and in

15

response to the prosecutor's question about whether he would have been lying had he told MacLean that he did not have a phone, defendant testified: "I had *my* phone. I had a phone. I didn't have her phone or her number." (Italics added.) In response to the prosecutor's question, "So your testimony now is that was your phone?" defendant confirmed: "Yes. . . . [T]hat was my phone in my possession." Defense counsel objected on the basis of relevance to the prosecutor's subsequent line of questioning regarding whether defendant recalled telling Detective Loriaux that he had "just found that phone."[7] However, by the time counsel objected, defendant had already testified falsely, and repeatedly, that the phone he possessed on the date of the assault was *his* phone. Thus, even assuming for the sake of argument that the reasoning in *Lavergne* applies here despite the disparate facts, and the probative value of defendant's out-of-court statements was reduced due to his motive to lie at the time he made the statements because he had not been charged with the robbery at the time he made the statements, he doubled down on the falsehood while under oath long after he had been convicted of the robbery, distinguishing this case from *Lavergne*.

The prosecutor did not commit misconduct by eliciting defendant's testimony regarding his out-of-court statements. While it is misconduct to intentionally elicit inadmissible testimony, the prosecutor had no reason to believe the out-of-court

---

[7] The People contend that defendant has forfeited his claim that the evidence was inadmissible under section 352. Typically, an objection is not sufficient to preserve a claim that the evidence was inadmissible unless the objection is "timely made and so stated as to make clear the specific ground of the objection or motion." (§ 353; see *People v. Valdez* (2012) 55 Cal.4th 82, 130 [objection to relevance insufficient to preserve claim that evidence was inadmissible under § 352].) But here, defense counsel's relevance objection adequately raised the issue that the prosecutor's questioning regarding the cellphone constituted a collateral matter subject to exclusion. Subsequently, at sidebar, defense counsel reiterated that he had raised an objection "in terms of its [*sic*] [§] 352 and so on, so forth." In the context here, the record provides adequate bases to conclude that defendant preserved his claims.

16

statements were inadmissible here. While *Lavergne* recognized the probative value of false statements is reduced where the witness had a motive to lie that did not apply to the rest of his testimony, an objection on that basis would have required the trial court to engage in a section 352 analysis to determine its admissibility because the testimony was not inadmissible per a court order, as we have discussed. Further, defense counsel did not object to the testimony. Accordingly, at the time the prosecutor elicited the testimony, he had no reason to know that the evidence was inadmissible, even assuming it was.

Defendant next contends the conduct underlying his prior robbery conviction was inadmissible under section 352. But while he argues that evidence of prior offenses generally should be excluded where the prior and charged offenses are both assaultive in nature (citing *People v. Duran* (1983) 140 Cal.App.3d 485, 498), and that whether defendant stole a phone in the prior robbery was not probative as to the credibility of his testimony in this case, his arguments ignore the circumstances under which the evidence was being offered. The evidence was not being offered simply to show that he had convicted of a prior offense; it was initially offered to demonstrate that he lied to law enforcement and, subsequently, to demonstrate that he lied during his testimony. The trial court did not abuse its discretion by allowing the prosecutor to introduce limited evidence regarding the circumstances of defendant's prior offense in the form of the false statements he made in relation to that crime to impeach his credibility. (See *Dalton*, *supra*, 7 Cal.5th at p. 214.)

Finally, defendant contends the trial court abused its discretion by indicating that it would allow the prosecutor to introduce testimony from the robbery victim to prove that the phone defendant possessed at the time of the assault on J.D. was recently stolen. But as we have discussed, evidence of the circumstances of defendant's prior conviction are generally admissible when those circumstances are relevant to determine whether defendant lied during his testimony. (See *Dalton*, *supra*, 7 Cal.5th at p. 214.)

17

Additionally, although the court indicated evidence of the circumstances of the robbery would be admissible, the court would have retained the discretion, under section 352, to limit the evidence presented of defendant's prior crime. The court never had the opportunity to exercise its discretion to admit or exclude evidence; thus, we are unable to find abuse of that discretion.

In sum, we conclude that evidence regarding defendant's prior false statements was admissible, and defendant has not shown that the trial court abused its discretion by admitting this evidence, either in contravention of its in limine order or under section 352. Additionally, because the prosecutor did not intentionally elicit inadmissible testimony, he did not commit misconduct.

II

*Section 1108 Evidence*

Defendant contends the trial court abused its discretion by allowing the prosecutor to cross-examine him on the details of his prior conviction of a sexual crime. He contends that his testimony was cumulative and lacked probative value because the victim of the crime, R.D., testified about the assault, a detective testified about his confession to the crime, and he had admitted the offense and agreed with R.D.'s and the detective's testimony. We disagree.

A. *Background*

The prosecution moved in limine to admit evidence of defendant's conviction for oral copulation on R.D. when she was unconscious. (Evid. Code, § 1108; former Pen. Code, § 288a, subd. (f) [now Pen. Code, § 287, subd. (f)].) The trial concluded the evidence was admissible.

R.D. and Detective John Wilson testified at trial. R.D. testified that she and defendant were friends; R.D. was a lesbian and did not have sexual relationships with men. She testified that she was awoken one night in 2015 to defendant lying on top of her and whispering in her ear. Defendant had pulled down her underwear while she slept.

18

He held her down, put his hand over her mouth, and touched her vagina. She pushed him off and ran to her door, which she discovered had been locked. She opened the door and immediately reported the assault to law enforcement.

Wilson testified that he interviewed defendant following the incident, and defendant admitted to kissing R.D., touching her vagina, and pulling down her pants and performing oral sex on her while she slept. Defendant also admitted that he locked R.D.'s door because he was worried that someone would come in. When R.D. woke up and realized who he was, she got angry, pushed him away, and ran out of the room. Wilson agreed that defendant expressed remorse and admitted that what he did was wrong.

On cross-examination, defendant acknowledged that he heard R.D.'s and Wilson's testimony. He agreed with the prosecutor that "most of what [R.D.] said is accurate," and he agreed "for the most part" with Wilson's testimony about his confession.

The prosecutor asked defendant about the details of the assault against R.D. Defendant testified that he went to R.D.'s house in the early morning when there were four or five people in the house. When asked whether knowing there were other people in the house prevented him from sexually assaulting R.D., defendant responded: "Those were never my intentions." At the time of the assault, defendant knew that R.D. was a lesbian, but her sexual orientation did not stop him from making sexual advances toward her because "circumstances, people change."

Defendant was asked to recount what happened during the assault. He stated that he began kissing R.D., and he disagreed with the prosecutor that R.D. tried to push him off her. Defense counsel objected under section 352 on the basis that "[defendant has] admitted it. [R.D. has] testified to it. There's no evidentiary value in going through all the details again. It's just not relevant now to deal with the admission, the obvious confession." The trial court overruled the objection, reasoning that "[t]he People do have to prove this in order to have the jury consider it." Defense counsel reiterated that his

19

objection was based on the premise that the assault had already been proved, and further questioning on the subject was inadmissible under section 352. The court responded: "The People still have the right to prove [the allegation]."

Defendant testified that he locked R.D.'s door for her privacy or safety. He disagreed that he was on top of her, but was instead kneeling over her. He kissed her forehead, lifted up her sweater and kissed her navel, and eventually "went further" after he believed she had woken up and declined to reject him. The assault ended when R.D. jumped up after someone knocked on the door. He did not realize until later that R.D. did not consent to his conduct. He admitted that he had made "the wrong decision" because he would never want to hurt her.

B. *Applicable Law*

As a general rule, evidence of a person's character or character trait is inadmissible when offered by the opposing party to prove the defendant's conduct on a specified occasion unless it involves commission of a crime, civil wrong, or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) other than a disposition to commit such an act. (§ 1101, subds. (a), (b).) There is an exception for the use of propensity evidence in sex offense cases. "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) As our Supreme Court has explained, "evidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses." (*People v. Falsetta* (1999) 21 Cal.4th 903, 920 (*Falsetta*).) "[T]he Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the

20

trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Id.* at p. 915.)

Section 352 provides "a realistic safeguard" for the admission of sex offense evidence to show propensity. (*Falsetta, supra,* 21 Cal.4th at p. 918.) "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.) Under section 352, evidence of uncharged offenses may be inadmissible where "the evidence would be merely cumulative regarding an issue that was not reasonably subject to dispute," and thus the "prejudicial effect of such evidence would outweigh its probative value." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 406; see *People v. Evers* (1992) 10 Cal.App.4th 588, 599, fn. 4 ["Evidence is cumulative if it is repetitive of evidence already before the jury"].) Presentation of cumulative evidence may "create[ ] a substantial danger of undue prejudice" and "unduly consume[ ] the court's time," and accordingly the People do not have the right to " 'over-prove their case or put on all the evidence that they have.' " (*People v. Williams* (2009) 170 Cal.App.4th 587, 610-611 (*Williams*).) However, " ' "[t]he prejudice which [section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors." ' [Citation.] Painting a person faithfully is not, of itself, unfair." (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.) We review for abuse of discretion a trial court's rulings on relevance and the exclusion of evidence under section 352. (*People v. Avila* (2006) 38 Cal.4th 491, 578.)

C. *Analysis*

Defendant does not challenge the admissibility of the section 1108 evidence, but rather contends that the trial court abused its discretion by allowing the prosecutor to

" 'over-prove' " his prior crime.[8]  He argues that requiring him to rehash the details of the assault was cumulative, lacked probative value, and inflamed the jury because he acknowledged his conviction, acquiesced to R.D.'s detailed account of the assault, and affirmed his confession as testified to by Wilson.

We disagree.  First, defendant's testimony was not cumulative.  At the outset of his testimony on this issue, defendant agreed with the prosecutor's assertion that "most of what [R.D.] said is accurate," and agreed "for the most part" with the prosecutor's assertion that what Wilson said about his confession was accurate.  That testimony did not constitute unequivocal agreement with R.D.'s and Wilson's testimony and did not foreclose the possibility that he disagreed with portions of it.  Moreover, defendant's testimony included details of his prior crime that were not offered by R.D. or Wilson.  He testified about how he came into R.D.'s house without the intention to sexually assault R.D. and that his knowledge about her sexual orientation did not prevent him from making sexual advances toward her.  He testified that he began kissing her and disagreed with the prosecutor (and R.D.) that R.D. tried to push him off after he began kissing her.  He testified about why he locked the door, that he knelt over her rather than lay on top of her, and that he "went further" than merely kissing her because she did not reject him.  He added that he realized only later that R.D. did not consent to his conduct.

Defendant's testimony is readily distinguishable from the cumulative evidence in *Williams*, *supra*, 170 Cal.App.4th at page 610, upon which he relies.  In *Williams*, the prosecutor put on evidence for at least *a day and a half* that was literally "a repeat of previous evidence," resulting in a situation where the "sheer volume of evidence extended the trial—and the burden on the judicial system and the jurors—beyond reasonable limits . . . amounted to a virtual street brawl."  (*Id*. at p. 611.)  Here,

---

[8] We note defendant's claim that section 1108 is unconstitutional, which we discuss, *post*.

22

defendant's testimony on this issue lasted only a few minutes and was not merely a repeat of R.D.'s and Wilson's testimony.

We also disagree with defendant that the evidence unduly inflamed the jury. Defendant characterizes his testimony as an "exhaustive accounting," but his testimony on this issue only consumed eight pages of the trial transcript. Moreover, it is unlikely that defendant's testimony would have inflamed the jury because it had only just heard from R.D. and Wilson, and thus the jury was already familiar with the facts of the crime. Additionally, defendant's prior conduct resulted in a conviction, making the jury less likely to have confused the issues or be tempted to punish defendant for uncharged crimes. (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

Finally, there is no indication that the testimony was confusing, misleading, or distracting to the jury, which was instructed appropriately about how to consider the prior sexual crime evidence. We presume the jury followed the court's instructions. (*Williams*, *supra*, 170 Cal.App.4th at p. 613.) The trial court did not abuse its discretion by allowing the prosecutor to question defendant about his prior sexual offense.[9]

III

*Constitutionality of Section 1108*

Defendant wishes to preserve for further review the claim that section 1108 is unconstitutional under the federal and California Constitutions. Our Supreme Court has repeatedly rejected the argument that admitting prior crimes evidence under section 1108 violates the constitutional right to due process and a fair trial. (See, e.g., *People v. Dworak* (2021), 11 Cal.5th 881, 900; *People v. Rhoades* (2019) 8 Cal.5th 393, 415; *Falsetta*, *supra*, 21 Cal.4th at p. 917 [recognizing that the trial court's discretion to exclude propensity evidence under § 352 "saves section 1108 from defendant's due

---

[9] Defendant argues that cumulative error compels reversal of the judgment. We have found no trial court error, and therefore his claim lacks merit.

23

process challenge"].) The court has also found that section 1108 does not improperly alter or reduce the prosecutor's burden of proof. (*Falsetta*, at p. 920.) We are obligated to follow this binding authority from our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject defendant's argument but recognize that he has preserved it.

## DISPOSITION

The judgment is affirmed.

　　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　　Duarte, Acting P. J.

We concur:

　　　 /s/
Renner, J.

　　　 /s/
Wiseman, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.